MARYANN P. GALLAGHER, SBN 146078
**LAW OFFICES OF MARYANN P. GALLAGHER**
205 S Broadway, Suite 920
Los Angeles, California 90012
mail@mpg-law.com
Telephone: (213) 626-1810
Facsimile: (213) 626-0961

Attorney for Plaintiff Janice Kevari

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE KEVARI on behalf of herself and others similarly situated and aggrieved,<br><br>PLAINTIFF,<br><br><br>*vs.*<br>SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC.; AND DOES 1 THROUGH 10, INCLUSIVE<br><br>DEFENDANTS. | Case No.:<br><br>**CLASS ACTION:**<br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT** |

   **COMES NOW** Plaintiff JANICE KEVARI who brings this complaint against the above-named Defendants and Does 1 through 10, and each of them, as follows:

   Plaintiff  Janice Kevari ( "Plaintiff"  or "Ms. Kevari") , by and through her attorneys, brings this action in her individual capacity, on behalf of other aggrieved

1.

current and former female managers and branch managers , and  all  managers and branch managers ( regardless of gender) who were over the age of 40 and were terminated and replaced with a younger less qualified employee,   and on behalf of all  similarly-situated current and former  female managers , and  all similarly-situated current and former managers and branch managers who were over the age of 40 and replaced with  a younger less qualified employee, against SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC.; AND DOES 1 THROUGH 10, INCLUSIVE [hereinafter referred to collectively as "EMPLOYER DEFENDANTS"] to redress gender and age discrimination at EMPLOYER DEFENDANTS.

Plaintiff alleges,  upon knowledge as to  herself , and otherwise upon information and belief, as follows:

## INTRODUCTION

1.  Established in 1980, Scottrade Inc. provides securities and brokerage and investment services to investors. Scottrade Inc. has 481  branch offices across the United States and is a wholly owned subsidiary of  TD AMERITRADE  INC. who recently acquired Scottrade and is currently merging all business and operations  under the name of TD Ameritrade INC. EMPLOYER DEFENDANTS  employ more than  1500 people across the United States.

2.  Employer Defendants have a pattern and practice of refusing to promote females to the  position of manager and branch manager, denying females

the same opportunities for advancement as their male counterparts.

3. Employer Defendants have a pattern of practice that once females are promoted to managers or branch managers, they are scrutinized much more than the men, they have to work twice as hard as their male counterparts and get less recognition, they are the first to be terminated, and when they are over the age of 50, Employer Defendants are routinely terminating them and replacing them with younger, less qualified men.

4. The Employer Defendants criticize female managers and branch managers for things when the male managers and branch managers do the same thing and nothing is done to them. The male managers are routinely given better assignments and branches, are given raises and promotions more frequently and their careers are advanced more quickly and freely than the female managers and branch managers.

5. Employer Defendants have a pattern and practice of terminating all long term branch managers and managers, over the age of 50, who have given their lives to the company, and replacing them with younger less qualified employees.

6. Further, Employer Defendants have a known atmosphere throughout their branches that tolerates offensive language, sexually explicit language and locker room talk in the male dominated branches.

7. Plaintiff brings this class and collective action lawsuit on behalf of similarly-situated female branch managers and managers and on behalf of similarly situated managers and branch managers over the age of 40 who were terminated and replaced by a younger employee. Plaintiff brings this action to seek redress for Employer Defendant's discriminatory practices. On behalf of the Classes defined below, and on behalf of similarly aggrieved female branch managers and managers and on behalf of similarly aggrieved

COMPLAINT FOR DAMAGES

managers and branch managers over the age of 40 who were terminated and replaced by a younger employee.  Plaintiff seeks all legal and equitable relieve available pursuant to California Fair Employment and Housing Act ; Government Code 12000 et seq. 12920 et seq., 12921 et seq.12926 et seq., 12940 e seq. , 12941 et seq.

**PARTIES**

8.  Plaintiff is a female, who was approximately 57 years old, and at all times herein mentioned was a resident of the State of California. Plaintiff worked at Scottrade Inc. as a branch manager. Despite  plaintiff's exemplary performance over more than 10 years with EMPLOYER DEFENDANTS , she was subjected to discrimination on  account of her gender ( female) and age ( 57).

9.  Defendant SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC. operate conjunctively under the name Scottrade Inc. which  is a corporation that does business in this jurisdiction and  throughout the State of California and throughout the United States.   FD AMERITRADE INC. is a corporation that does business in this jurisdiction and throughout the State of California and throughout the United States and  has recently acquired Scottrade Inc., Scottrade Investment Management Inc. and Scottrade Financial Service Inc. and  is  currently combining the  corporations so that the existing  corporation will be FD AMERITRADE INC.

10. At all times mentioned, each and every defendant was the agent or employee, joint venture, alter ego,  of every other defendant.  In doing the things  alleged herein, each and every defendant was acting within the course and scope of this agency and employment and was acting with the

4.

COMPLAINT FOR DAMAGES

consent, permission, and authorization of each of the remaining defendants. All actions of each defendant alleged in the causes of action ( into which this paragraph is incorporated by reference) were ratified and approved by the officers or managing agents of every other defendant.

## JURISDICTION AND VENUE

11. This court has original jurisdiction over the parties pursuant to 28 U.S.C.§1332 et seq. This court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367.

12. This court has personal jurisdiction over this action because Defendants are corporations or other entities licensed to do business in California, which also regularly conduct business in this District. Further, in this class action multiple members of the class reside in this District.

13. Venue is proper pursuant to 28 USC §1391(b), (c)(2), and (d).

14. On or about February 1,2017, plaintiff filed a complaint with the Department of Fair Employment and Housing and Received a Right to sue.

## FACTUAL ALLEGATIONS

15. Plaintiff worked for EMPLOYER DEFENDANTS For approximately 10 years. She was a branch manager over one of the largest branches in Southern California..

16. Plaintiff is informed and believes that the total percentage of women branch managers or managers is approximately 20% compared to 80% male branch managers and managers. More detailed information would be in the possession of Employer Defendants and plaintiff will seek further discovery and requests liberal discovery in this case due to the nature and extent of the claims.

COMPLAINT FOR DAMAGES

17. Plaintiff is informed and believes that the male dominated culture extends to the highest executives and thus the male dominated culture of favoritism and degradation of females starts at the top and permeates the corporate culture.

18. The mostly male executive level maintains centralized control over its branch managers and managers employment terms and conditions, the working conditions, the culture of the company, job assignments, management level assignments, promotions, training, demotions, discipline, evaluation, compensation and all policies and procedures. Employer Defendants male dominated leadership presides over the policies, practices, procedures and culture that have a disparate impact on female manages branch managers. Such policies and procedures and practices are not valid, job-related, or justified by any business necessity. These employment practices, policies, procedures are not unique or limited to any particular Branch office rather they permeate all locations and thus affect all female managers and branch managers in the same manner regardless of the office in which they work, the branch or state that they are located.

19. Employer Defendants policies procedures and practices all suffer from a lack of transparency, adequate quality standards and controls, sufficient implementation metrics, management HR/ review, or if there is management HR review, that is also skewed in favor of the male dominated culture. The centralized policies and procedures have a disparate impact on female managers and branch managers. Since the percentage of female branch managers and mangers is so small, one way to determine the disparate impact is to determine the percentage of female managers who were replaced with male managers or disciplined more harshly than male managers within the total group of female managers/branch managers.

6.

20. Employer Defendants lacks a system of accountability with respect to gender discrimination.  There  should be an individual department that is charged with the duty of regularly monitoring personnel actions to compare how employees of different sexes have been treated and a system in place to enforce a firm policy that  discrimination not be tolerated.   Without a fair and  objective system of accountability, women are subject to unfounded criticism or criticized unfairly for behavior that is permitted in their male counterparts.

21. The Employer Defendants have failed to impose adequate oversight and discipline on male employees who violate equal employment  opportunity laws and have failed to create adequate incentives for its managerial and supervisory personnel to comply with  such laws regarding its employment policies , procedure and practices.

22. Thus the Employer Defendants  tolerate, and even cultivates a hostile work environment where women are devalued ,where retaliation for voicing gender discrimination claims is the norm, where women are  routinely criticized and held to standards  of behavior and performance  far stricter then the men.  The  male dominated branches  allow for  and  engender offensive language, off color  remarks,  which are routinely  overlooked when a male makes them, but if a female were to make a remark, they are immediately criticized.

23. The Employer Defendants have permitted an atmosphere that when a woman reaches a certain age ( over 40)  they seek to replace her with a younger male.

24. The Employer Defendants  uniform policies, procedures and practices have a disparate impact on its female attorney employees , as a result,  Plaintiff and the Classes she seeks to represent have been individually and systemically

7.

COMPLAINT FOR DAMAGES

discriminated against.

25. Women over the age of 40 have suffered the most severe discrimination in being driven to resign and if they refuse, they are  criticized for doing this that the male employees do routinely without any criticism.   In addition, Employer Defendants have set about to replace its older branch managers and managers across the board with  younger employees. Instead of valuing the experience and expertise the older employees have built up in their years of loyal service to the employer defendants,   Employer Defendants see these employees as old or outdated and wanted  a younger look to their branches and thus systematically terminated the older branch managers and managers and replaced them with younger, less experienced, cheaper  employees.

26.  Plaintiff had given over 10 years of her life to the Employer Defendants. She worked twice as hard as the men  and eventually was promoted to branch manager where she continued to outperform other male branch managers.  She worked nights and weekends, sacrificing  any ability to have a family instead  working tirelessly for the Employer Defendants. As she reached the age of 57 ,  the Employer Defendants had decided  it was time to bring in a new , younger, male employee.  They tried to drive plaintiff out with nitpicking criticisms at first.  Then  when she refused to quit, and hung in there , the pressure increased, the criticisms increased.  She was  criticized for doing things the men would do but were not criticized for.

27.  One of the executives, ED STURDIVANT took over plaintiffs region. He and his supervisor GARY DI SALVO  set about to drive plaintiff from  her job.  Within weeks of his becoming her  manager,  Sturdivant gave her a negative performance rating, when he had only been   the supervisor for a few weeks and  he had not personally observed plaintiff's work.  He then came to her office and  started to interview her employees. He told her there

COMPLAINT FOR DAMAGES

were poor performers , he named three men.  He met with them , they knew their jobs were in jeopardy.  Within  a few days, one of the employees whose job was in jeopardy made a complaint to the  employee hotline about  Ms. Kevari.  He  made complaints about occurrences that allegedly happened 2 years before.   These were false allegations.

28. Plaintiff was not told what the allegations were , but was  told by ED STURDIVANT that she had made certain comments. Plaintiff had not made the comments and told  Sturdivant. She told Sturdivant that she had a feeling that something was going on and she felt he was  discriminating against her and she was going to contact Human Resources.

29. After she was confronted  by Sturdivant, she called Human Resources and complained that she felt he was discriminating against her based on her age and gender. She said that there was false allegations being made against her. Human Resources did nothing. They did not investigate plaintiff's claims against Sturdivant.  Instead they fired plaintiff.

30. Not content with just terminating plaintiff, Employers made up a claim that would affect her  license so that she would not be able to work elsewhere. This  false claim has affected her license and  prevented her from being able to obtain employment.

31. Plaintiff believes she was one of many female branch managers over the age of 40 nationwide  who were either driven to resign or terminated if they did not resign and replaced with  younger men.

**Claims Brought on Behalf of Class**

32. Plaintiff Kevari  seeks to represent the  Nationwide and California Class, defined as: current, former and future  female  branch managers who worked for  EMPLOYER DEFENDANTS at any time during the applicable liability period including without limitation, female mangers and branch managers,

9.

and branch managers and managers over the age of 40 who were replaced with a younger employee.

33. On behalf of the Nationwide and California Class, Plaintiff Ms. Kevari brings claims under the California Fair Employment and Housing Act, Cal. Gov. Code § 12940, et seq., California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., and California Code of Civil Procedure § 1021.5.

34. The proposed Nationwide and California Class meets the requirements for certification pursuant to Federal Rule of Civil Procedure 23(a), as well as subsections (b)(3) and (c)(4), as described below.

Numerosity and Impracticability of Joinder

35. On information and belief, the Nationwide and California Class consists of many dozens, if not hundreds, of former, current and future branch managers and managers , too numerous to make joinder practicable.

Common Questions of Law and Fact

36. The prosecution of the Nationwide and California Class' claims requires the adjudication of numerous questions of law and fact common to the Plaintiff Kevari's individual claims and those of the Nationwide and California Class.

37. The common questions of law include, inter alia, (a) whether Employer Defendants have engaged in unlawful disparate impact gender discrimination in its compensation, assignment, selection, performance evaluation, promotion, advancement, and termination policies, procedures and practices, and in the general terms and conditions of work and employment under FEHA, and/or other statutes; (b) whether the failure to institute adequate standards, quality controls, implementation metrics, or oversight in assignment, compensation, evaluation, development, promotion

COMPLAINT FOR DAMAGES

and termination systems violates FEHA,   and/or other statutes; (c) whether the lack of transparency and of opportunities for redress in those systems violates FEHA, and/or other statutes; and (d) whether senior management and HR's failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates FEHA, and/or  other statutes.

38. The common questions of fact include whether Employer Defendants  has, inter alia: (a) used a  system of assignment that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (b) through the use of that system of  assignment, failed to promote female employees and place them in the position of branch manager or manager  over  similarly-situated male attorney employees  (c) systematically, intentionally or knowingly  drove female employees to resign,  and when they would not resign, terminated them for false reasons or for reasons that they did not criticize male employees; (d) used a  discipline system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (e)  allow the branches supervised by male managers to use profanity, offensive language, engage in drinking parties, going out to see female dancers  and on the other hand when they wanted to get rid of a female branch manager come in and  claim that behavior not nearly as offensive was grounds for termination of the branch manager (f) used a promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (h) through the use of that promotion system, precluded or delayed the promotion of female  employees into higher level positions traditionally held by male employees; (i)  used a

system for performance evaluations that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (j) through the use of that performance evaluation system inadequately, inequitably, or disparately measured and classified female branch managers or managers and male branch managers and managers performance; (k) systematically, intentionally or knowingly subjected female branch managers and managers to inaccurate, inequitable or discriminatorily lowered performance evaluations; (l) used HR and equal employment opportunity systems that lack meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (m) through the use of those systems, minimized, ignored or covered up evidence of gender discrimination and harassment in the workplace and/or otherwise mishandled the investigation of responses to complaints of discrimination and harassment brought to the attention of senior management, the HR department, or through other reporting channels; (n) systematically, intentionally, knowingly, or deliberately showed an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints about gender discrimination and harassment in the workplace; (o) failed to adequately or meaningfully train, coach or discipline senior management on equal employment opportunity principles and compliance; and (p) carried out demotions, and/or job reassignments and terminations in a discriminatory manner based on gender(q) whether Employer Defendants treated female branch managers and managers with disrespect, disdain, failed to give them the support they gave the male managers, and would overlook things the male branch managers did while they would criticize and penalize the female branch managers for the same things.

COMPLAINT FOR DAMAGES

39.  The answers to these common questions will be the same for Plaintiff
Kevari  and all  Class members and will establish (or not establish) the
elements of Plaintiff's claims at  the same time as the Class members'
claims.

Typicality

40. Plaintiff Kevari's claims are typical of the claims of the Class. The relief
sought by the Plaintiff for gender discrimination complained of herein is also
typical of the relief sought on behalf of the Class.

41. Like the members of the  Class, Plaintiff Kevari  is a female and worked as
A branch manager and manager  for Employer Defendants during the
liability period.

42. Discrimination in assignment, selection, promotion, advancement,
compensation and  termination affected the  employment opportunities of
Plaintiff Kevari  and all  members of the Class in the same or similar way.

43. Employer  Defendants  have failed to create adequate incentives for its
executives and managers to comply with its own policies and equal
employment opportunity laws regarding each of the
employment policies, procedures and practices referenced in this Complaint,
and has failed to  adequately discipline its executives, managers, and other
employees when they violated company policy or discrimination laws.
These failures have affected Plaintiff Kevari and the  Class members in the
same or similar ways.

44. The relief necessary to remedy Plaintiff Kevari's  claims is the same relief
necessary  to remedy the claims of the Class members in this case.

Adequacy of Representation

45.  Plaintiff Kevari' interests are co-extensive with those of the members of the
Class. Plaintiff Kevari seeks to remedy Employer Defendants'

13.

discriminatory employment policies, procedures and practices so that female branch managers and managers will no longer be  treated worse than their male counterparts doing the same or similar work  and won't be terminated or forced to resign  Plaintiff Kevari  is willing and able to represent the Class fairly and vigorously as she pursues her individual claims in this action.  Plaintiff Kevari has retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment  discrimination class action of this size and complexity. The combined interests, experience, and resources of Plaintiff's counsel to litigate competently the individual and class claims at issue in   this case satisfy the adequacy of representation requirement.

Requirements of Rule 23(b)(3)

46. The common issues of fact and law affecting the claims of Plaintiff Kevari and the  Class members predominate over any issues affecting only individual claims. These  issues include whether  the Employer Defendants have engaged in gender discrimination against female branch managers and managers  by: (1)  failing to prevent, respond to, adequately investigate, and/or  appropriately resolve instances of gender discrimination; and (2) carrying out discriminatory demotions, and/or job reassignments  (3) allowing  male branch managers to retain low performing employees ( other men) when requiring the women to get rid of low performing employees or get terminated for failing to do so (4) allowing male branch managers to use offensive language, have parties, take their other male employees out to watch female dancers, part at the office  and turning a  blind eye (5) criticizing  female branch managers and managers for things they did not criticize the male employees for (6)  trying to force female branch managers to quit  and when they would not quit writing them up and terminating them

COMPLAINT FOR DAMAGES

for false reasons.

47.  Prosecution of these claims on a class-wide basis is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiff and the Class.

48.  Plaintiff Kevari's individual claims require resolution of the common questions of whether the Employer Defendants have engaged in a systemic pattern or practice of disparate impact discrimination against its female branch managers and managers.

49.  Plaintiff Kevari's has standing to seek such relief because of the adverse effect that such discrimination has had on her individual and on female branch manages and managers generally.

50.  The Employer Defendants caused Plaintiff Kevari's injuries through its discriminatory policies, procedures and practices. These injuries are redressable through systemic relief and class-wide remedies.

51.  In order to achieve such class-wide relief, Plaintiff Kevari will first establish the existence of systemic gender discrimination as the premise for the relief she seeks. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

52. Certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff Kevari and the Class, and the Defendants.

53. The cost of proving the disparate impact of Employer Defendant's policies, procedures and practices makes it impracticable for Plaintiff Kevari and members of the Class to prosecute their claims individually.

Requirements of Rule 23(c)(4)

COMPLAINT FOR DAMAGES

54. Class-wide liability and the relief sought herein present common issues capable of class-wide resolution, which would advance the interests of the parties in an efficient manner.

ALLEGATIONS REGARDING PUNITIVE DAMAGES

55. The Employer Defendants have performed the acts alleged with malice, fraud, oppression, and/or reckless indifference to the protected rights of Plaintiff Kevari and class members. Plaintiff Kevari and Class members are thus entitled to recover punitive damages in an amount according to proof.

**FIRST CAUSE OF ACTION**

**(For GENDER ( FEMALE SEX) DISCRIMINATION AGAINST DEFENDANTS SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC. ;TD AMERITRADE INC. and DOES 1 Through 10, Inclusive)**

56. At all times herein, SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE, INC.; and Does 1 through 10 did business in Los Angeles in the State of California and throughout the United States.

57. Plaintiff and the Class members are informed and believes that as of November 2017 TD Ameritrade acquired ScottTrade, Inc. and its related entities and is currently combining the two entities under the name TD Ameritrade. Thus, TD Ameritrade, Inc. is a successor corporation, a joint venture, an alter ego, a joint employer. At all times herein mentioned, DEFENDANTS AND DOES 1 through 10, were Alter Egos, Franchisors, Franchisees, Joint Ventures, and Joint Employers.

58. At all times herein mentioned, SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC., and DOES 1 through 10, [hereinafter

COMPLAINT FOR DAMAGES

EMPLOYER DEFENDANTS] were Plaintiff and the  Class members employer, joint employer, alter egos of each other, joint ventures, successor corporations and or entities and at all times were acting within the course and scope of that employment

59.    PLAINTIFF and the Class members are  informed and believes, and thereon alleges, that at all times relevant herein, that DEFENDANTS and DOES 1 through 10 were the owners, managing agents, alter ego or were acting as the agent, managing agent, principal, owner, partner, joint venture, representative, supervisor, manager, servant, employee and/or co-conspirator of each of the other DEFENDANTS, and were at all times mentioned herein acting within the course and scope of said agency and employment, and that all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and consent of each DEFENDANT designated herein.

60.    PLAINTIFF and the class members are  ignorant of the true names and capacities, whether corporate, associate, individual or otherwise, of DEFENDANTS sued herein as DOES 1 through 10, Inclusive, and therefore sues said DEFENDANTS, and each of them, by such fictitious names. PLAINTIFF and the class members  will seek leave of court to amend this Complaint to assert the true names and capacities of the fictitiously named DEFENDANTS when the same have been ascertained. PLAINTIFF  and class members are  informed and believe, and thereon alleges, that each DEFENDANT designated as a "DOE" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages and liabilities hereinafter alleged and caused injuries and damages proximately thereby to the PLAINTIFF and class members , as hereinafter alleged.

61.    At all times herein mentioned, PLAINTIFF  and class members were employed by EMPLOYER DEFENDANTS.

62.    Plaintiff and class members , who were  females, were targeted for termination in part because of  their  sex/gender. DEFENDANTS decided they wanted to get rid of the female employees and replace them with younger male employees, despite the fact that Plaintiff and the class members  had been a loyal and hardworking employees, they targeted Plaintiff and the class members . Plaintiff and the class members had worked twice as hard  to prove themselves, to succeed and to achieve, they sacrificed having a family and dedicated their  time and energy to Employer Defendants, and all of that was ignored  when the supervisors would  discriminate against Plaintiff and class members  based on their sex/gender.

63.    Employer Defendants undermined Plaintiff and class members, demeaned them  in front of others, acted in a condescending manner towards them , so that their employees would look with disfavor upon them. Employer Defendants challenged their authority and their opinions, to try and diminish their worth and effectiveness based on their gender/sex.

64.    The identity of all Defendants, and Does 1 through 10, including managing agents and supervisors involved in the ratification of the harassment, discrimination and retaliation as well as any other entities such as alter egos, joint employers, principals, agents, subsidiaries or parent corporations are not fully known to Plaintiff and Class Members at this time. Defendants have that information within their possession custody and control and complainant will have to file a lawsuit and conduct discovery to obtain the information. Plaintiff and class members reserves the right to name any later discovered managing agents, supervisors, alter egos, joint employers, principals, agents, subsidiaries or parent corporations upon discovery of their identity as additional Defendants, since Plaintiff and class members  would not be able to file a FEHA claim against these newly discovered Defendants, Plaintiff and class members reserves the right to add

COMPLAINT FOR DAMAGES

1  them as DOES 1 through 10 without filing a FEHA claim first.

2      65.    It is believed that Employer Defendants had a pattern and practice of

3  harassment, discrimination, and retaliation based on gender/female and that

4  information is also within the Employer Defendants control at this time and would

5  not be available to complainant until after a lawsuit is filed.

6      66.    Other facts and information which are equally or exclusively within

7  the possession and control of Employer Defendants which are learned after the

8  lawsuit has been filed are incorporated herein by reference as though set forth in

9  full herein.

10     67.    Plaintiff and the Class Members  ability to advance in their careers

11  and use the  years of experience they had acquired was impaired, just because of

12  their  age and their gender, female. Plaintiff and the class members  were denied

13  the ability to advance their careers, because of their age and gender. Male

14  managers and male branch managers were given better opportunities were held to

15  lesser standards, had issues overlooked and brushed under the rug. However, when

16  the Employer Defendants wanted to get rid of female older branch managers or

17  managers and replace them with younger male managers, they would unfairly

18  discipline the female managers for things they did not discipline the male

19  managers for. They did this to try and get the female managers to quit and

20  sometimes it worked. However if the female managers or branch managers refused

21  to be driven from their jobs they were terminated unfairly.

22     68.    Plaintiff and the Class members  had been  loyal and hardworking

23  employees of Employer Defendants . Defendants began to go after Plaintiff and

24  Class members  and to criticize them for issues that were not within their control,

25  or that they did not criticize or discipline the male managers for.   Plaintiff and the

26  class members were under much greater scrutiny  than the  male employees.

27     69.    The male branch managers were permitted to have more freedom in

28

COMPLAINT FOR DAMAGES

how they ran the branch , while the female branch managers  were  criticized and disciplined  for doing the same thing the males were doing.

70.     Plaintiff and the class member were terminated and replaced with younger male employees who were less qualified.

71.     Defendants and each of them, and unknown Does 1 through 10, inclusive, acts and the acts of its managerial employees as hereinbefore described were illegal, in violation of FEHA, and were committed maliciously, fraudulently or oppressively with the intent of injuring complainant, and/or with a willful and conscious disregard of Plaintiff' and the Class right to work in an environment free from retaliation, harassment, and discrimination based on  their  sex/gender. Plaintiff and  the class  reserve the right to amend and or supplement this complaint upon discovery of additional facts and information.

72.     Plaintiff and the class  does not have access to all of this information and the information will be the subject of discovery by the Plaintiff and the class which can only begin after a lawsuit is filed.

73.      A motivating factor in plaintiff and the class's termination was their gender (female).

74.     Defendants' actions were in violation of Government Code 12940 et seq. which prohibits discrimination based on gender.

75.     Plaintiff timely filed a complaint with the Department of Fair Employment and Housing (Hereinafter the "DFEH") against DEFENDANTS for Violation of the FEHA and received her Right to Sue. (See Exhibit "A" attached hereto). Plaintiffs' counsel sent to Defendants the Right to Sue Letter and provided defendants with notice of the right to sue in February 2017. Therefore Plaintiff and class  has therefore exhausted  their  administrative remedies and the class is entitled to the same exhaustion by plaintiff.

76.     FEHA codified at Government Code §12900 et seq. §12940 and

COMPLAINT FOR DAMAGES

§12941 prohibits among other things, harassment, discrimination, retaliation in employment on account of certain protected classifications, including a person's sex /gender, and further the FEHA requires an investigation into allegations of harassment and discrimination.

77.    As a direct and legal result of the aforesaid acts and conduct of DEFENDANTS, and each of them, Plaintiff and the class  has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which Plaintiff and the class  will seek leave of court to amend when ascertained.

78.    As a direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the class  has been caused, and did suffer, and continue to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety.

79.    As a further direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff  and the class has been caused to suffer and did suffer a loss of earnings, earning capacity, medical benefits, including insurance and other benefits to which  they are entitled. The exact nature and extent of said injuries is presently unknown to Plaintiff and the class, who will pray leave of court to assert the same when they are ascertained.

80.    Plaintiff and the class  has been generally damaged in an amount within the jurisdictional limits of this court.

81.    The aforementioned acts of Defendants and its alter egos, committed by and through their managing agents, supervisors, were done with the knowledge of Defendants and its alter egos and or were ratified and condoned by Defendants

COMPLAINT FOR DAMAGES

and their alter egos, and each of them, were willful, wanton, malicious, intentional, oppressive, illegal and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff and the class , and were done by managerial agents of Defendants and its alter egos, and Does 1 through 10, and with the express knowledge, consent, and ratification of managerial employees of Defendants and its alter egos, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial. The discrimination and termination of Plaintiff  and the class  was motivated at least in part by her gender, the actions were in conscious disregard of her rights and in violation of FEHA. The discrimination and termination of plaintiff was devised by Defendants and, was ratified and condoned by Defendants. Not only was the discrimination and termination of Plaintiff and the class  illegal, it was also in direct violation of the policies defendants set forth in their own policies preventing discrimination. The Defendants and their managing agents and alter ego's conduct as set forth herein was reprehensible.

82.    Plaintiff and the class  believes that Employer defendants had a pattern and practice of discriminating against women based on their gender and this was a common practice with Employer Defendants. Plaintiff and the class believes that Employer Defendants only promoted a small percentage of women to be branch managers. Plaintiff and the class  believe a much higher percentage of men were promoted to branch managers even though they were less qualified then the women. Plaintiff and the class  believes that defendants then treated women managers much harsher than men, criticized them unfairly and this was a known and accepted culture at Employer Defendants.

83.    The information regarding other women managers is in the exclusive possession of Employer Defendants and plaintiff and the class believe  it may be the subject of spoliation, modification or refusal to produce the information by the

Employer Defendants. Plaintiff and the class will seek all appropriate remedies if this is the case or occurs during the litigation.

84. The harm to Plaintiff and the class was "physical" in the sense that it affected her emotional and mental health, rather than being a purely economic harm. (State Farm v Campbell 538 U.S. 308 at p. 419.) It was objectively reasonable to assume that Defendants employers', managing agents, acts of discrimination and harassment and retaliation toward Plaintiff and the class would affect their emotional well-being, and therefore Defendants "conduct evinced an indifference to or a reckless disregard of the health or safety of others." Plaintiff and the class quickly depleted their savings and lost their medical insurance as a result of termination, and therefore it appears that they "had financial vulnerability." Roby v. McKesson (2009)47 Cal. 4th 686;

85. As a result of the discriminatory acts of Defendants their agents and alter egos, and each of them, as alleged herein, Plaintiff and the class is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Government Code § 12965(b).

86. PLAINTIFF and the class has suffered general damages in an amount within the jurisdiction of this Court.

## SECOND CAUSE OF ACTION

**(For AGE DISCRIMINATION AGAINST SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC. And DOES 1 through 10, Inclusive)**

87. Plaintiff repeats and re-pleads the First Cause of Action, as though set forth in full herein and incorporates all of the same as though set forth in full herein. At all times herein mentioned, SCOTTRADE, INC.; SCOTTRADE

INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE, INC.; and Does 1 through 10 were Plaintiff and the class' employer, joint employer, successor corporation, alter ego, and were qualified employers under the Labor Code acting within the course and scope of that employment.

88.    At all times herein mentioned, SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE, INC and DOES 1 through 10 [hereinafter EMPLOYER DEFENDANTS], were Plaintiff and the class's employer, and were qualified employers under the FEHA acting within the course and scope of that employment. PLAINTIFF and the class  at all times was a covered eligible employee as defined in the sections set forth above.

89.    PLAINTIFF and the class  is informed and believes, and thereon alleges, that at all times relevant herein, that DEFENDANTS and DOES 1 through 10 were the owners, managing agents, alter ego or were acting as the agent, managing agent, principal, owner, partner, joint venture, representative, supervisor, manager, servant, employee and/or co-conspirator of each of the other DEFENDANTS, and were at all times mentioned herein acting within the course and scope of said agency and employment, and that all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and consent of each DEFENDANT designated herein.

90.    PLAINTIFF and the class  is ignorant of the true names and capacities, whether corporate, associate, individual or otherwise, of DEFENDANTS sued herein as DOES 1 through 10, Inclusive, and therefore sues said DEFENDANTS, and each of them, by such fictitious names. PLAINTIFF and the class  will seek leave of court to amend this Complaint to assert the true names

24.

COMPLAINT FOR DAMAGES

and capacities of the fictitiously named DEFENDANTS when the same have been ascertained. PLAINTIFF and the class is informed and believes, and thereon alleges, that each DEFENDANT designated as a "DOE" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages and liabilities hereinafter alleged and caused injuries and damages proximately thereby to the PLAINTIFF and the class , as hereinafter alleged.

91.     At all times herein mentioned, PLAINTIFF and the class  was employed by EMPLOYER DEFENDANTS.

92.      Plaintiff and the class  who were  over the age of 40 ( plaintiff was 57 years old)  and the class who were over the age of 40 were targeted for termination in part because of  their  age. DEFENDANTS decided they wanted to get rid of the older managers and replace them with younger male employees, despite the fact that Plaintiff and the class  had been a loyal and hardworking employee for  many years they targeted Plaintiff and the class  just because of their age.

93.     The identity of all Defendants and Does 1 through 10, including managing agents and supervisors involved in the ratification of the harassment, discrimination and retaliation as well as any other entities such as alter egos, joint employers, principals, agents, subsidiaries or parent corporations are not fully known to Plaintiff at this time. Defendants have that information within their possession custody and control and complainant will have to file a lawsuit and conduct discovery to obtain the information. Plaintiff and the class reserves the right to name any later discovered managing agents, supervisors, alter egos, joint employers, principals, agents, subsidiaries or parent corporations upon discovery of their identity as additional Defendants, since Plaintiff would not be able to file a FEHA claim against these newly discovered Defendants, Plaintiff and the class reserves the right to add them as DOES 1 through 10 without filing a FEHA claim first.

COMPLAINT FOR DAMAGES

94.     It is believed that Employer Defendants had a pattern and practice of harassment, discrimination, and retaliation and that information is also within the Employer Defendants control at this time and would not be available to  plaintiff and the class until after a lawsuit is filed.

95.      Other facts and information which are equally or exclusively within the possession and control of Employer Defendants which are learned after the lawsuit has been filed are incorporated herein by reference as though set forth in full herein.

96.      Plaintiff and the class  who were over 40, branch managers and other female managers over 40 also were denied the ability to advance their careers, because of their age and gender. Younger male managers and male branch managers were given better opportunities were held to lesser standards, had issues overlooked and brushed under the rug. However, when the Employer Defendants wanted to get rid of female older branch managers or managers and replace them with younger male managers, they would unfairly discipline the female managers for things they did not discipline the male managers for. They did this to try and get the older female managers to quit and sometimes it worked. However if the older female managers or branch managers refused to be driven from their jobs they were terminated unfairly.

97.      Janice Kevari had been a loyal and hardworking employee of Employer Defendants for over 10 plus years. She worked her way up to branch manager and then continued to work day and night and had the most successful branch. She also had the largest office in the region to oversee and still managed to keep it on top. However, in approximately 2015 a new Regional Manager was assigned to her district, Ed Sturdivant who reported to the Divisional Manager Gary DeSalvo. Immediately, Sturdivant began to go after Plaintiff and to criticize her for issues that were not within her control, or that he did not criticize or

discipline the male managers for. He was setting out to get rid of Plaintiff. Plaintiff was told that she "had a target on her back". Sturdivant claimed that Plaintiff had poor performers in her branch and she was not coming down hard enough on them. Plaintiff spoke to other branch managers who were men who told her that they had poor performers in their branch and Mr. Sturdivant was supportive of them and did not criticize them.

98.    From the time Sturdivant took over, Plaintiff noticed she was under much greater scrutiny and that he and those he supervised were looking for a way to get rid of Plaintiff, or to try and make her workplace hostile so that she would leave. Plaintiff noticed that other older female branch managers in other locations were also being forced to resign to save their reputations from unwarranted criticism that was being unfairly leveled at them and not the men.

99.    In January 2016 Sturdivant came to Plaintiff's branch and interviewed her employees. There were low performing employees (male) Mark, Adam and Matt. They knew their jobs were in jeopardy when Sturdivant completed his visit. The next day in speaking with one of the low performing employees, the employee whose job was in jeopardy told Plaintiff that "it will be different without you around here".

100.    On January 14, 2016 shortly after Sturdivant's visit and meeting with Mark, Adam and Matt, Mark called the ethics hotline and reported false allegations against Plaintiff, that allegedly took place two years before. Mark said in his complaint he wanted "the record to reflect the incidents".  It was not until after Mark met with Sturdivant that he made a complaint about incidents that allegedly occurred two years before.

101.    On February 2, 2016 Sturdivant met with Ms. Kevari and Human Resources. Plaintiff told him that she has some concerns about her treatment and was going to go to Human Resources to report them. Sturdivant then gives her

27.

"examples" of some of the allegations from the employees who were the low performing employees whose jobs were in jeopardy and which allegedly occurred years before. Plaintiff told him the statements they claim she made are not true. Ms. Kevari then called Human Resources to complain that she felt Sturdivant was discriminating against her and unfairly criticizing her because she is a female and she is older.

102.    On February 4, 2016 Employer Defendants terminated Plaintiff.

103.    The Employer Defendants terminated the branch managers and managers who were over the age of 40 and replaced them with younger employees who were under the age of 40 and less qualified.

104.    Defendants and each of them, and unknown Does 1 through 10, inclusive, acts and the acts of its managerial employees as hereinbefore described were illegal, in violation of FEHA, and were committed maliciously, fraudulently or oppressively with the intent of injuring complainant, and/or with a willful and conscious disregard of Plaintiff' and the Class' right to work in an environment free from retaliation, harassment, and discrimination based on her sex/gender. Plaintiff and the Class reserves the right to amend and or supplement this complaint upon discovery of additional facts and information.

105.    Plaintiff and the class does not have access to all of this information and the information will be the subject of discovery by the Plaintiff and the class which can only begin after a lawsuit is filed.

106.    A motivating factor in plaintiff' and the class' termination was their age s they were over 40 and within the protected class.

107.    Defendants' actions were in violation of Government Code 12940 et seq. which prohibits discrimination based on age.

108.    Plaintiff timely filed a complaint with the Department of Fair Employment and Housing (Hereinafter the "DFEH") against DEFENDANTS for

COMPLAINT FOR DAMAGES

Violation of the FEHA and received her Right to Sue. Plaintiffs' counsel sent to Defendants the Right to Sue Letter and provided defendants with notice of the right to sue in February 2017. Therefore Plaintiff and the class has therefore exhausted their administrative remedies.

109.    FEHA codified at Government Code §12900 et seq. §12940 and §12941 prohibits among other things, harassment, discrimination, retaliation in employment on account of certain protected classifications, including a person's age, and further the FEHA requires an investigation into allegations of harassment and discrimination.

110.    Government Code §12941 provides in part:

> The Legislature further reaffirms and declares "its intent that the courts interpret the State's Statutes prohibiting age discrimination in employment broadly and vigorously, in a manner comparable to prohibitions against sex and race discrimination, and with the goal of not only protecting older workers as individuals, but also of protecting older workers as a group, since they face unique obstacles in the later phases of their careers."

111.    As a direct and legal result of the aforesaid acts and conduct of DEFENDANTS, and each of them, Plaintiff and the class and the class has been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which Plaintiff and the class will seek leave of court to amend when ascertained.

112.    As a direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the class has been caused, and

COMPLAINT FOR DAMAGES

did suffer, and continue to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff and the class , who will pray leave of court to assert the same when they are ascertained.

113.    As a further direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the class  has been caused to suffer and did suffer a loss of earnings, earning capacity, medical benefits, including insurance and other benefits to which she was entitled. The exact nature and extent of said injuries is presently unknown to Plaintiff and the class, who will pray leave of court to assert the same when they are ascertained.

114.    Plaintiff and the class  has been generally damaged in an amount within the jurisdictional limits of this court.

115.    The aforementioned acts of Defendants and its alter egos, committed by and through their managing agents, supervisors, were done with the knowledge of Defendants and its alter egos and or were ratified and condoned by Defendants and their alter egos, and each of them, were willful, wanton, malicious, intentional, oppressive, illegal and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff and the class , and were done by managerial agents of Defendants and its alter egos, and Does 1 through 10, and with the express knowledge, consent, and ratification of managerial employees of Defendants and its alter egos, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial. The discrimination and termination of Plaintiff and the class  was motivated at least in part by her gender, the actions were in conscious disregard of her rights and in violation

30.

COMPLAINT FOR DAMAGES

of FEHA. The discrimination and termination of plaintiff and the class  was devised by Defendants and, was ratified and condoned by Defendants. Not only was the discrimination and termination of Plaintiff and the class  illegal, it was also in direct violation of the policies defendants set forth in their own policies preventing discrimination. The Defendants and their managing agents and alter ego's conduct as set forth herein was reprehensible.

116.    Plaintiff and the class  believe that Employer defendants had a pattern and practice of discriminating against older managers based on their age and especially older female managers, although the age discrimination was not limited only to female managers.   Plaintiff and the class  believes she was one of many older managers (male and female) who were terminated and replaced with younger less qualified managers.

117.    The information regarding other older managers (male and female) is in the exclusive possession of Employer Defendants and plaintiff and the class  believe it may be the subject of spoliation, modification or refusal to produce the information by the Employer Defendants. Plaintiff and the class  will seek all appropriate remedies if this is the case or occurs during the litigation.

118.    The harm to Plaintiff  and the class was "physical" in the sense that it affected  Their  emotional and mental health, rather than being a purely economic harm. (State Farm v Campbell 538 U.S. 308 at p. 419.) It was objectively reasonable to assume that Defendants employers', managing agents, acts of discrimination and harassment and retaliation toward Plaintiff and the class  would affect  their  emotional well-being, and therefore Defendants "conduct evinced an indifference to or a reckless disregard of the health or safety of others." Plaintiff and the class  quickly depleted their savings and lost  their  medical insurance as a result of termination, and

31.

COMPLAINT FOR DAMAGES

therefore it appears that she "had financial vulnerability." Roby v. McKesson (2009)47 Cal. 4th 686;

119.    As a result of the discriminatory acts of Defendants their agents and alter egos, and each of them, as alleged herein, Plaintiff and the  class is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in California Government Code § 12965(b).

120.    PLAINTIFF has suffered general damages in an amount within the jurisdiction of this Court.

## JURY TRIAL DEMAND

The Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, the Plaintiff prays for judgment against the DEFENDANTS, and each of them and Does 1 through 10, as follows:

<u>AGAINST ALL DEFENDANTS AND DOES 1 THROUGH 10:</u>

1.    For general damages in an amount within the jurisdictional limits of this court;

2.    For medical expenses and related items of expense, according to proof;

3.    For loss of earnings, earning capacity and benefits, according to proof;

4.    For attorneys' fees according to proof;

5.    For prejudgment interest according to proof;

6.    For costs of suit incurred herein; and

7.    For interest as allowed by law and

8.    For all penalties as permitted under the law

9.    For Special Damages as permitted by Statute

32.

1      10.    For such other and further relief as the court may deem just and

2             proper.

3      11.    For exemplary and punitive damages in an amount according to

4             proof.

5

6

7      Dated: January 31, 2018          The Law Offices of Maryann P. Gallagher

8

9                                       By_____/s/_____

10                                            MARYANN P. GALLAGHER

11                                            Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES