MARYANN P. GALLAGHER, SBN 146078
**LAW OFFICES OF MARYANN P. GALLAGHER**
205 S Broadway, Suite 920
Los Angeles, California 90012
mail@mpg-law.com
Telephone: (213) 626-1810
Facsimile: (213) 626-0961

Attorney for Plaintiff Janice Kevari

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE KEVARI on behalf of herself and others similarly situated and aggrieved,<br><br>          PLAINTIFF,<br><br><br>          *vs.*<br>SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC.; AND DOES 1 THROUGH 10, INCLUSIVE<br><br>          DEFENDANTS. | Case No.: CV-18-00819-JFW(GJSx)<br>**SECOND AMENDED COMPLAINT: CLASS ACTION: CLASS AND COLLECTIVE ACTION COMPLAINT** |

**COMES NOW** Plaintiff JANICE KEVARI who brings this Second Amended complaint against the above-named Defendants and Does 1 through 10, and each of them, as follows:

Plaintiff Janice Kevari ( "Plaintiff" or "Ms. Kevari"), by and through her attorneys, brings this action in her individual capacity, on behalf of other aggrieved

1.

current and former female managers and branch managers, and all managers and branch managers (regardless of gender) who were over the age of 40 and were terminated and replaced with a younger less qualified employee, and on behalf of all similarly-situated current and former female managers, and all similarly-situated current and former managers and branch managers (both men and women) who were over the age of 40 and replaced with a younger less qualified employee, against SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC.; AND DOES 1 THROUGH 10, INCLUSIVE [hereinafter referred to collectively as "EMPLOYER DEFENDANTS"] to redress gender and age discrimination at EMPLOYER DEFENDANTS.

Plaintiff alleges, upon knowledge as to herself, and otherwise upon information and belief, as follows:

## INTRODUCTION

1.  Established in 1980, Scottrade Inc. provides securities and brokerage and investment services to investors. Scottrade Inc. has 481 branch offices across the United States and is a wholly owned subsidiary of TD AMERITRADE INC. who recently acquired Scottrade and is currently merging all business and operations under the name of TD Ameritrade INC. TD AMERITRADE purchased all the assets of Scottrade and all of its clients. TD AMERITRADE is a alter ego, successor corporation, joint venture, principal and/or parent corporation of Scottrade.
    EMPLOYER DEFENDANTS employ more than 1500 people across the United States.

2.  Employer Defendants have a pattern and practice of refusing to promote females to the position of manager and branch manager, denying females the same opportunities for advancement as their male counterparts.

3. Employer Defendants have a pattern of practice that once females are promoted to managers or branch managers, they are scrutinized much more than the men, they have to work twice as hard as their male counterparts and get less recognition, they are the first to be terminated, and when they are over the age of 50, Employer Defendants are routinely terminating them and replacing them with younger, less qualified men.

4. The Employer Defendants criticize female managers and branch managers for things when the male managers and branch managers do the same thing and nothing is done to them. The male managers are routinely given better assignments and branches, are given raises and promotions more frequently and their careers are advanced more quickly and freely than the female managers and branch managers.

5. Employer Defendants have a pattern and practice of terminating all long term branch managers and managers, over the age of 50, who have given their lives to the company, and replacing them with younger less qualified employees.

6. Further, Employer Defendants have a known atmosphere throughout their branches that tolerates offensive language, sexually explicit language and locker room talk in the male dominated branches.

7. Plaintiff brings this class and collective action lawsuit on behalf of similarly-situated female branch managers and managers and on behalf of similarly situated managers and branch managers over the age of 40 who were terminated and replaced by a younger employee. Plaintiff brings this action to seek redress for Employer Defendant's discriminatory practices. On behalf of the Classes defined below, and on behalf of similarly aggrieved female branch managers and managers and on behalf of similarly aggrieved managers and branch managers over the age of 40 who were terminated and

3.

replaced by a younger employee. Plaintiff seeks all legal and equitable relieve available pursuant to California Fair Employment and Housing Act; Government Code 12000 et seq. 12920 et seq., 12921 et seq.12926 et seq., 12940 e seq., 12941 et seq., TITLE VII of the Civil Rights Act of 1964, The Equal Pay Act of 1963, §6(d) of the Fair Labor Standards Act 29 USC §206(d),The Age Discrimination in Employment Act of 1967, Sections 102 and , and 703(a)(1) of the Civil Rights Act of 1991.

## PARTIES

8.  Plaintiff is a female, who was approximately 57 years old, and at all times herein mentioned was a resident of the State of California. Plaintiff worked at Scottrade Inc. as a branch manager. Despite Plaintiff's exemplary performance over more than 10 years with EMPLOYER DEFENDANTS, she was subjected to discrimination on account of her gender (female) and age (57).

9.  CLASS PARTIES: There are over 100 or more proposed class members, the members come from all states in the United States, some of the members have different citizenship from AMERITRADE/SCOTTRADE INC. which is a California Corporation and some of the members have a different citizenship from Scottrade Investment Management Inc. which is a Missouri Corporation, and some of the members have a different citizenship from TD AMERITRADE INC. which recently acquired Scottrade

10. Defendant SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC. operate conjunctively under the name Scottrade Inc. which is a corporation that does business in this jurisdiction and throughout the State of California and throughout the United States. TD AMERITRADE INC. is a corporation

SECOND AMENDED COMPLAINT FOR DAMAGES

that does business in this jurisdiction and throughout the State of California and throughout the United States and has recently acquired Scottrade Inc., Scottrade Investment Management Inc. and Scottrade Financial Service Inc. and is currently combining the corporations so that the existing corporation will be TD AMERITRADE INC. TD AMERITRADE INC is the mere continuation of Scottrade, Inc., and the Scottrade Defendants and has purchased all of the assets of Scottrade, Inc., all of its clients and customers and employees so that Scott Trade Inc continues under the name TD AMERITRADE INC. Further TD Ameritrade Inc. is an alter ego of Scottrade, Inc., since there is a unity of interest and ownership between the entities such that their separate personalities no longer exist. Further if the court disregarded TD Ameritrade, Inc., it would leave the plaintiff without a method to recover as Scottrade Inc has transferred all its assets, customers and employees to TD Ameritrade.

11. At all times mentioned, each and every defendant was the agent or employee, joint venture, alter ego, successor corporation, of every other defendant. In doing the things alleged herein, each and every defendant was acting within the course and scope of this agency and employment and was acting with the consent, permission, and authorization of each of the remaining defendants. All actions of each defendant alleged in the causes of action (into which this paragraph is incorporated by reference) were ratified and approved by the officers or managing agents of every other defendant.

**JURISDICTION AND VENUE**

12. This Court has original jurisdiction over the parties pursuant to 28 U.S.C. §1332 et seq. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

SECOND AMENDED COMPLAINT FOR DAMAGES

13. This Court has personal jurisdiction over this action because Defendants are corporations or other entities licensed to do business in California, which also regularly conduct business in this District. Further, in this class action multiple members of the class reside in this District.

14. Venue is proper pursuant to 28 USC §1391(b),(c)(2),and (d).

15. On or about February 1, 2017, Plaintiff filed a complaint with the Department of Fair Employment and Housing and Received a Right to sue. The DFEH complaint alleged that Defendants had a pattern and practice of discrimination. Plaintiffs have also filed a complaint with the EEOC on or about April 6, 2018.

16. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(d) in that there are 100 or more proposed class members; (2) at least some of the members of the proposed class have a different citizenship from the defendant; and (3) the aggregated claims of the proposed class members exceed the sum or value of $5,000,000.

## FACTUAL ALLEGATIONS

17. Plaintiff worked for EMPLOYER DEFENDANTS for approximately 10 years. She was a branch manager over one of the largest branches in Southern California.

18. Plaintiff is informed and believes that the total percentage of women branch managers or managers is approximately 20% compared to 80% male branch managers and managers. More detailed information would be in the possession of Employer Defendants and Plaintiff will seek further discovery and requests liberal discovery in this case due to the nature and extent of the claims.

19. Plaintiff is informed and believes that the male dominated culture extends to

SECOND AMENDED COMPLAINT FOR DAMAGES

the highest executives and thus the male dominated culture of favoritism and degradation of females starts at the top and permeates the corporate culture.

20. The mostly male executive level maintains centralized control over its branch managers and managers employment terms and conditions, the working conditions, the culture of the company, job assignments, management level assignments, promotions, training, demotions, discipline, evaluation, compensation and all policies and procedures. Employer Defendants male dominated leadership presides over the policies, practices, procedures and culture that have a disparate impact on female manages branch managers. Such policies and procedures and practices are not valid, job-related, or justified by any business necessity. These employment practices, policies, procedures are not unique or limited to any particular branch office rather they permeate all locations and thus affect all female managers and branch managers in the same manner regardless of the office in which they work, the branch or state that they are located.

21. Employer Defendants policies procedures and practices all suffer from a lack of transparency, adequate quality standards and controls, sufficient implementation metrics, management HR review, or if there is management HR review, that is also skewed in favor of the male dominated culture. The centralized policies and procedures have a disparate impact on female managers and branch managers. Since the percentage of female branch managers and mangers is so small, one way to determine the disparate impact is to determine the percentage of female managers who were replaced with male managers or disciplined more harshly than male managers within the total group of female managers/branch managers.

22. Employer Defendants lacks a system of accountability with respect to gender discrimination. There should be an individual department that is

SECOND AMENDED COMPLAINT FOR DAMAGES

charged with the duty of regularly monitoring personnel actions to compare how employees of different sexes have been treated and a system in place to enforce a firm policy that discrimination not be tolerated. Without a fair and objective system of accountability, women are subject to unfounded criticism or criticized unfairly for behavior that is permitted in their male counterparts.

23. The Employer Defendants have failed to impose adequate oversight and discipline on male employees who violate equal employment opportunity laws and have failed to create adequate incentives for its managerial and supervisory personnel to comply with such laws regarding its employment policies, procedure and practices.

24. Thus the Employer Defendants tolerate, and even cultivates a hostile work environment where women are devalued, where retaliation for voicing gender discrimination claims is the norm, where women are routinely criticized and held to standards of behavior and performance far stricter then the men. The male dominated branches allow for and engender offensive language, off color remarks, which are routinely overlooked when a male makes them, but if a female were to make a remark, they are immediately criticized.

25. The Employer Defendants have permitted an atmosphere that when a woman reaches a certain age (over 40) they seek to replace her with a younger male.

26. The Employer Defendants uniform policies, procedures and practices have a disparate impact on its female attorney employees, as a result, Plaintiff and the Classes she seeks to represent have been individually and systemically discriminated against.

27. Women over the age of 40 have suffered the most severe discrimination in

8.

being driven to resign and if they refuse, they are criticized for doing this that the male employees do routinely without any criticism. In addition, Employer Defendants have set about to replace its older branch managers and managers across the board with younger employees. Instead of valuing the experience and expertise the older employees have built up in their years of loyal service to the employer defendants, Employer Defendants see these employees as old or outdated and wanted a younger look to their branches and thus systematically terminated the older branch managers and managers and replaced them with younger, less experienced, cheaper employees.

28. Plaintiff had given over 10 years of her life to the Employer Defendants. She worked twice as hard as the men and eventually was promoted to branch manager where she continued to outperform other male branch managers. She worked nights and weekends, sacrificing any ability to have a family instead working tirelessly for the Employer Defendants. As she reached the age of 57, the Employer Defendants had decided it was time to bring in a new, younger, male employee. They tried to drive plaintiff out with nitpicking criticisms at first. Then when she refused to quit, and hung in there, the pressure increased, the criticisms increased. She was criticized for doing things the men would do but were not criticized for.

29. One of the executives, ED STURDIVANT took over Plaintiff's region. He and his supervisor GARY DI SALVO set about to drive Plaintiff from her job. Within weeks of his becoming her manager, Sturdivant gave her a negative performance rating, when he had only been the supervisor for a few weeks and he had not personally observed Plaintiff's work. He then came to her office and started to interview her employees. He told her there were poor performers, he named three men. He met with them, they knew their jobs were in jeopardy. Within a few days, one of the employees whose job

SECOND AMENDED COMPLAINT FOR DAMAGES

was in jeopardy made a complaint to the employee hotline about Ms. Kevari. He made complaints about occurrences that allegedly happened 2 years before. These were false allegations.

30. Plaintiff was not told what the allegations were, but was told by ED STURDIVANT that she had made certain comments. Plaintiff had not made the comments and told Sturdivant. She told Sturdivant that she had a feeling that something was going on and she felt he was discriminating against her and she was going to contact Human Resources.

31. After she was confronted by Sturdivant, she called Human Resources and complained that she felt he was discriminating against her based on her age and gender. She said that there was false allegations being made against her. Human Resources did nothing. They did not investigate plaintiff's claims against Sturdivant. Instead they fired plaintiff.

32. Not content with just terminating Plaintiff, Employers made up a claim that would affect her license so that she would not be able to work elsewhere. This false claim has affected her license and prevented her from being able to obtain employment.

33. Plaintiff believes she was one of many female branch managers over the age of 40 nationwide who were either driven to resign or terminated if they did not resign and replaced with younger men.

**Claims Brought on Behalf of Class**

34. Plaintiff Kevari seeks to represent the Nationwide and California Class, defined as:

Nationwide Class: All current, former and future female managers who worked for EMPLOYER DEFENDANTS at any time during the applicable liability period including without limitation, female mangers who were paid

less than male managers for males performing jobs that are substantially equal in actual job performance and substance, despite their title.

National Class: Women who were discriminated against in treatment, terms and conditions of their employment.

National Class: Men and Women over the Age of 40 who were replaced with younger employees.

California Class: All current, former and future female managers in California who worked for EMPLOYER DEFENDANTS at any time during the applicable liability period including without limitation, female mangers who were paid less than male managers for males performing jobs that are substantially equal in actual job performance and substance, despite their title.

National Class: California women who were discriminated against in treatment, terms and conditions of their employment.

National Class: California Men and Women over the Age of 40 who were replaced with younger employees.

On behalf of the Nationwide and California Class, Plaintiff Ms. Kevari brings claims under the California Fair Employment and Housing Act, Cal. Gov. Code § 12940, et seq., TITLE VII of the Civil Rights Act of 1964, The Equal Pay Act of 1963, §6(d) of the Fair Labor Standards Act 29 USC §206(d),The Age Discrimination in Employment Act of 1967, Sections 102 and , and 703(a)(1) of the Civil Rights Act of 1991.

35. The proposed Nationwide and California Class meets the requirements for certification pursuant to Federal Rule of Civil Procedure 23(a), as well as subsections (b)(3) and (c)(4), as described below.

Numerosity and Impracticability of Joinder

36. On information and belief, the Nationwide and California Class consists of

SECOND AMENDED COMPLAINT FOR DAMAGES

1    many dozens, if not hundreds, of former, current and future branch managers

2    and managers, too numerous to make joinder practicable.

3    Common Questions of Law and Fact

4    37. The prosecution of the Nationwide and California Class' claims requires the

5    adjudication of numerous questions of law and fact common to the Plaintiff

6    Kevari's individual claims and those of the Nationwide and California Class.

7    38. The common questions of law include, inter alia, (a) whether Employer

8    Defendants have engaged in unlawful disparate impact gender

9    discrimination in its compensation, assignment, selection, performance

10    evaluation, promotion, advancement, and termination policies, procedures

11    and practices, and in the general terms and conditions of work and

12    employment under FEHA, and/or other statutes; (b) whether the failure to

13    institute adequate standards, quality controls, implementation metrics, or

14    oversight in assignment, compensation, evaluation, development, promotion

15    and termination systems violates FEHA, and/or other statutes; (c) whether

16    the lack of transparency and of opportunities for redress in those systems

17    violates FEHA, and/or other statutes; and (d) whether senior management

18    and HR's failure to prevent, investigate, or properly respond to evidence and

19    complaints of discrimination in the workplace violates FEHA, and/or other

20    statutes.

21    39. The common questions of fact include whether Employer Defendants has,

22    inter alia: (a) used a system of assignment that lacks meaningful or

23    appropriate standards, implementation metrics, quality controls,

24    transparency, and opportunities for redress; (b) through the use of that

25    system of assignment, failed to promote female employees and place them in

26    the position of branch manager or manager over similarly-situated male

27    attorney employees; (c) systematically, intentionally or knowingly drove

28

12.

female employees to resign, and when they would not resign, terminated them for false reasons or for reasons that they did not criticize male employees; (d) used a discipline system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (e) allow the branches supervised by male managers to use profanity, offensive language, engage in drinking parties, going out to see female dancers and on the other hand when they wanted to get rid of a female branch manager come in and claim that behavior not nearly as offensive was grounds for termination of the branch manager; (f) used a promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (h) through the use of that promotion system, precluded or delayed the promotion of female employees into higher level positions traditionally held by male employees; (i) used a system for performance evaluations that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (j) through the use of that performance evaluation system inadequately, inequitably, or disparately measured and classified female branch managers or managers and male branch managers and managers performance; (k) systematically, intentionally or knowingly subjected female branch managers and managers to inaccurate, inequitable or discriminatorily lowered performance evaluations; (l) used HR and equal employment opportunity systems that lack meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (m) through the use of those systems, minimized, ignored or covered up evidence of gender discrimination and harassment in the workplace and/or otherwise mishandled the investigation of responses to complaints of discrimination

13.

and harassment brought to the attention of senior management, the HR department, or through other reporting channels; (n) systematically, intentionally, knowingly, or deliberately showed an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints about gender discrimination and harassment in the workplace; (o) failed to adequately or meaningfully train, coach or discipline senior management on equal employment opportunity principles and compliance; (p) carried out demotions, and/or job reassignments and terminations in a discriminatory manner based on gender; and (q) whether Employer Defendants treated female branch managers and managers with disrespect, disdain, failed to give them the support they gave the male managers, and would overlook things the male branch managers did while they would criticize and penalize the female branch managers for the same things.

40. The answers to these common questions will be the same for Plaintiff Kevari and all Class members and will establish (or not establish) the elements of Plaintiff's claims at the same time as the Class members' claims.

Typicality

41. Plaintiff Kevari's claims are typical of the claims of the Class. The relief sought by the Plaintiff for gender discrimination and age discrimination and equal pay complained of herein is also typical of the relief sought on behalf of the Class.

42. Like the members of the Class, Plaintiff Kevari is a female, over the age of 40 and worked as a branch manager and manager for Employer Defendants during the liability period.

43. Discrimination in assignment, selection, promotion, advancement, compensation and termination affected the employment opportunities of

SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiff Kevari and all members of the Class in the same or similar way.

44. Employer Defendants have failed to create adequate incentives for its executives and managers to comply with its own policies and equal employment opportunity laws regarding each of the employment policies, procedures and practices referenced in this Complaint, and has failed to adequately discipline its executives, managers, and other employees when they violated company policy or discrimination laws. These failures have affected Plaintiff Kevari and the Class members in the same or similar ways.

45. The relief necessary to remedy Plaintiff Kevari's claims is the same relief necessary to remedy the claims of the Class members in this case.

Adequacy of Representation

46. Plaintiff Kevari' interests are co-extensive with those of the members of the Class. Plaintiff Kevari seeks to remedy Employer Defendants' discriminatory employment policies, procedures and practices so that female branch managers and managers will no longer be treated worse or paid lees than their male counterparts doing the same or similar work and won't be terminated or forced to resign. The discrimination and failure to comply with the Equal Pay requirements has continued through the limitations period and continues today thus the class members continue to be harmed presently. Further, plaintiff is over the age of 40 and can represent the class members who have been discriminated against in the limitations period and continue to be discriminated against today. Plaintiff Kevari is willing and able to represent the Class fairly and vigorously as she pursues her individual claims in this action. Plaintiff Kevari has retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and

15.

SECOND AMENDED COMPLAINT FOR DAMAGES

resources of Plaintiff's counsel to litigate competently the individual and class claims at issue in this case satisfy the adequacy of representation requirement.

<u>Requirements of Rule 23(b)(3)</u>

47. The common issues of fact and law affecting the claims of Plaintiff Kevari and the Class members predominate over any issues affecting only individual claims. These issues include whether the Employer Defendants have engaged in gender discrimination against female branch managers and managers by: (1) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination; (2) carrying out discriminatory demotions, and/or job reassignments; (3) allowing male branch managers to retain low performing employees (other men) when requiring the women to get rid of low performing employees or get terminated for failing to do so; (4) allowing male branch managers to use offensive language, have parties, take their other male employees out to watch female dancers, party at the office and turning a blind eye; (5) criticizing female branch managers and managers for things they did not criticize the male employees for; and (6) trying to force female branch managers to quit and when they would not quit writing them up and terminating them for false reasons (7) denying equal pay to female branch managers and managers (8) discriminating against older branch managers and managers in terms and conditions of their employment.

48. Prosecution of these claims on a class-wide basis is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiff and the Class.

49. Plaintiff Kevari's individual claims require resolution of the common questions of whether the Employer Defendants have engaged in a systemic

16.

pattern or practice of disparate impact discrimination against its female branch managers and managers.

50. Plaintiff Kevari's has standing to seek such relief because of the adverse effect that such discrimination has had on her individual and on female branch manages and managers generally.

51. The Employer Defendants caused Plaintiff Kevari's injuries through its discriminatory policies, procedures and practices. These injuries are redressable through systemic relief and class-wide remedies.

52. In order to achieve such class-wide relief, Plaintiff Kevari will first establish the existence of systemic gender, age discrimination as the premise for the relief she seeks. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

53. Certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff Kevari and the Class, and the Defendants.

54. The cost of proving the disparate impact of Employer Defendant's policies, procedures and practices makes it impracticable for Plaintiff Kevari and members of the Class to prosecute their claims individually.

Requirements of Rule 23(c)(4)

55. Class-wide liability and the relief sought herein present common issues capable of class-wide resolution, which would advance the interests of the parties in an efficient manner.

Allegations Regarding Punitive Damages

56. The Employer Defendants have performed the acts alleged with malice, fraud, oppression, and/or reckless indifference to the protected rights of Plaintiff Kevari and class members. Plaintiff Kevari and Class members are

17.

thus entitled to recover punitive damages in an amount according to proof.

Diversity Jurisdiction:

57. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(d) in that there are 100 or more proposed class members; (2) at least some of the members of the proposed class have a different citizenship from the defendant; and (3) the aggregated claims of the proposed class members exceed the sum or value of $5,000,000.

## FIRST CAUSE OF ACTION

**(For GENDER (FEMALE SEX) DISCRIMINATION AGAINST DEFENDANTS SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC. ;TD AMERITRADE INC. and DOES 1 Through 10, Inclusive)**

58. At all times herein, SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE, INC.; and Does 1 through 10 did business in Los Angeles in the State of California and throughout the United States.

59. Plaintiff and the Class members are informed and believe that as of November 2017, TD Ameritrade acquired Scottrade, Inc. and its related entities and is currently combining the two entities under the name TD Ameritrade. As set forth herein,  TD Ameritrade, Inc. is a successor corporation, a joint venture, an alter ego, a joint employer, or a joint venture. The specific facts of the merger/purchase of Scottrade, Inc. by TD Ameritrade, Inc. are within Defendants custody and control and subject to discovery. At all times herein mentioned, DEFENDANTS AND DOES 1 through 10, were Alter Egos, Franchisors, Franchisees, Joint Ventures, and Joint Employers. Defendants Ameritrade, Inc. has filed a certificate of

18.

interested parties identifying Scottrade Inc. as its subsidiary.

60. At all times herein mentioned, SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC., and DOES 1 through 10, [hereinafter EMPLOYER DEFENDANTS] were Plaintiff and the Class members employer, joint employer, alter egos of each other, joint ventures, successor corporations, merged corporations, wholly own subsidiaries, and or entities and at all times were acting within the course and scope of that employment

61. PLAINTIFF and the Class members are informed and believes, and thereon alleges, that at all times relevant herein, that DEFENDANTS and DOES 1 through 10 were the owners, managing agents, alter ego or were acting as the agent, managing agent, principal, owner, partner, joint venture, alter ego, subsidiary, representative, supervisor, manager, servant, employee and/or co-conspirator of each of the other DEFENDANTS, and were at all times mentioned herein acting within the course and scope of said agency and employment, and that all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and consent of each DEFENDANT designated herein.

62. PLAINTIFF and the class members are ignorant of the true names and capacities, whether corporate, associate, individual or otherwise, of DEFENDANTS sued herein as DOES 1 through 10, Inclusive, and therefore sues said DEFENDANTS, and each of them, by such fictitious names. PLAINTIFF and the class members will seek leave of court to amend this Complaint to assert the true names and capacities of the fictitiously named DEFENDANTS when the same have been ascertained. PLAINTIFF and class members are informed and believe, and thereon alleges, that each

19.

SECOND AMENDED COMPLAINT FOR DAMAGES

DEFENDANT designated as a "DOE" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages and liabilities hereinafter alleged and caused injuries and damages proximately thereby to the PLAINTIFF and class members, as hereinafter alleged.

63. At all times herein mentioned, PLAINTIFF and class members were employed by EMPLOYER DEFENDANTS.

64. Plaintiff and class members, who were females, were targeted for termination in part because of their sex/gender. DEFENDANTS decided they wanted to get rid of the female employees and replace them with younger male employees, despite the fact that Plaintiff and the class members had been a loyal and hardworking employees, they targeted Plaintiff and the class members. Plaintiff and the class members had worked twice as hard to prove themselves, to succeed and to achieve, they sacrificed having a family and dedicated their time and energy to Employer Defendants, and all of that was ignored when the supervisors would discriminate against Plaintiff and class members based on their sex/gender.

65. Employer Defendants undermined Plaintiff and class members, demeaned them in front of others, acted in a condescending manner towards them, so that their employees would look with disfavor upon them. Employer Defendants challenged their authority and their opinions, to try and diminish their worth and effectiveness based on their gender/sex.

66. The identity of all Defendants, and Does 1 through 10, including managing agents and supervisors involved in the ratification of the harassment, discrimination and retaliation as well as any other entities such as alter egos, joint employers, principals, agents, subsidiaries or parent corporations are not fully known to Plaintiff and Class Members at this time. Defendants have that information within their possession custody and control and

SECOND AMENDED COMPLAINT FOR DAMAGES

complainant will have to file a lawsuit and conduct discovery to obtain the information. Plaintiff and class members reserves the right to name any later discovered managing agents, supervisors, alter egos, joint employers, principals, agents, subsidiaries or parent corporations upon discovery of their identity as additional Defendants, since Plaintiff and class members would not be able to file a FEHA claim against these newly discovered Defendants, Plaintiff and class members reserves the right to add them as DOES 1 through 10 without filing a FEHA claim first.

67. It is believed that Employer Defendants had a pattern and practice of harassment, discrimination, and retaliation based on gender/female and that information is also within the Employer Defendants control at this time and would not be available to complainant until after a lawsuit is filed.

68. Other facts and information which are equally or exclusively within the possession and control of Employer Defendants which are learned after the lawsuit has been filed are incorporated herein by reference as though set forth in full herein.

69. Plaintiff and the Class Members ability to advance in their careers and use the years of experience they had acquired was impaired, just because of their age and their gender, female. Plaintiff and the class members were denied the ability to advance their careers, because of their age and gender. Male managers and male branch managers were given better opportunities were held to lesser standards, had issues overlooked and brushed under the rug. However, when the Employer Defendants wanted to get rid of female older branch managers or managers and replace them with younger male managers, they would unfairly discipline the female managers for things they did not discipline the male managers for. They did this to try and get the female managers to quit and sometimes it worked. However if the female

SECOND AMENDED COMPLAINT FOR DAMAGES

managers or branch managers refused to be driven from their jobs they were terminated unfairly.

70. Plaintiff and the Class members had been loyal and hardworking employees of Employer Defendants. Defendants began to go after Plaintiff and Class Members and to criticize them for issues that were not within their control, or that they did not criticize or discipline the male managers for. Plaintiff and the class members were under much greater scrutiny than the male employees.

71. The male branch managers were permitted to have more freedom in how they ran the branch, while the female branch managers were criticized and disciplined for doing the same thing the males were doing.

72. Plaintiff and the class member were terminated and replaced with younger male employees who were less qualified.

73. Defendants and each of them, and unknown Does 1 through 10, inclusive, acts and the acts of its managerial employees as hereinbefore described were illegal, in violation of FEHA, and were committed maliciously, fraudulently or oppressively with the intent of injuring complainant, and/or with a willful and conscious disregard of Plaintiff' and the Class right to work in an environment free from retaliation, harassment, and discrimination based on their sex/gender. Plaintiff and the class reserve the right to amend and or supplement this complaint upon discovery of additional facts and information.

74. Plaintiff and the Class does not have access to all of this information and the information will be the subject of discovery by the Plaintiff and the class which can only begin after a lawsuit is filed.

75. A motivating factor in Plaintiff and the class's termination and mistreatment was their gender (female).

SECOND AMENDED COMPLAINT FOR DAMAGES

76. Defendants' actions were in violation of Government Code 12940 et seq. which prohibits discrimination based on gender. Employer Defendants actions were also in violation of TITLE VII of the Civil Rights Act of 1964, The Equal Pay Act of 1963, and Plaintiff's and the Class are entitled to punitive damages pursuant to, Sections 102 and 103 of the Civil Rights Act of 1991. Plaintiff timely filed a complaint with the EEOC before filing this lawsuit.

77. Plaintiff timely filed a complaint with the Department of Fair Employment and Housing (Hereinafter the "DFEH") against DEFENDANTS for Violation of the FEHA and received her Right to Sue. (See Exhibit "A" attached hereto). Plaintiff alleged a pattern and practice of discrimination. Since TD Ameritrade Inc has assumed all of Scottrade, Inc. assets and employees, notice to Scottrade, Inc. was also notice to TD Ameritrade, Inc. Plaintiff's counsel sent to Defendants the Right to Sue Letter and provided defendants with notice of the right to sue in February 2017. Therefore Plaintiff and class have therefore exhausted their administrative remedies and the class is entitled to the same exhaustion by Plaintiff.

78. FEHA codified at Government Code §12900 et seq. §12940 and §12941 prohibits among other things, harassment, discrimination, retaliation in employment on account of certain protected classifications, including a person's sex /gender, and further the FEHA requires an investigation into allegations of harassment and discrimination.  TITLE VII of the Civil Rights Act of 1964, The Equal Pay Act of 1963, §6(d) of the Fair Labor Standards Act 29 USC §206(d),an d 703(a)(1) of the Civil Rights Act of 1991 prohibits among other things harassment, discrimination and retaliation in employment on account of protected classification namely gender(Female).

79. As a direct and legal result of the aforesaid acts and conduct of DEFENDANTS, and each of them, Plaintiff and the Class have been directly

23.

and legally caused to suffer actual damages pursuant to  including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which Plaintiff and the class will seek leave of court to amend when ascertained.

80. As a direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the Class have been caused, and did suffer, and continue to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety.

81. As a further direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the Class have been caused to suffer and did suffer a loss of earnings, earning capacity, medical benefits, including insurance and other benefits to which they are entitled. The exact nature and extent of said injuries is presently unknown to Plaintiff and the class, who will pray leave of court to assert the same when they are ascertained.

82. Plaintiff and the Class have been generally damaged in an amount within the jurisdictional limits of this court.

83. The aforementioned acts of Defendants and its alter egos, committed by and through their managing agents, supervisors, were done with the knowledge of Defendants and its alter egos and or were ratified and condoned by Defendants and their alter egos, and each of them, were willful, wanton, malicious, intentional, oppressive, illegal and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff and the class, and were done by managerial agents of Defendants and its alter egos, and Does 1 through 10, and with the express knowledge, consent,

SECOND AMENDED COMPLAINT FOR DAMAGES

and ratification of managerial employees of Defendants and its alter egos, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial. The discrimination and termination of Plaintiff and the class was motivated at least in part by her gender, the actions were in conscious disregard of her rights and in violation of FEHA. The discrimination and termination of plaintiff was devised by Defendants and, was ratified and condoned by Defendants. Not only was the discrimination and termination of Plaintiff and the class illegal, it was also in direct violation of the policies defendants set forth in their own policies preventing discrimination. The Defendants and their managing agents and alter ego's conduct as set forth herein was reprehensible.

84. Plaintiff and the class believe that Employer defendants had a pattern and practice of discriminating against women based on their gender and this was a common practice with Employer Defendants. Plaintiff and the class believes that Employer Defendants only promoted a small percentage of women to be branch managers. Plaintiff and the class believe a much higher percentage of men were promoted to branch managers even though they were less qualified then the women. Plaintiff and the class believes that defendants then treated women managers much harsher than men, criticized them unfairly and this was a known and accepted culture at Employer Defendants.

85. The information regarding other women managers is in the exclusive possession of Employer Defendants and plaintiff and the class believe it may be the subject of spoliation, modification or refusal to produce the information by the Employer Defendants. Plaintiff and the class will seek all appropriate remedies if this is the case or occurs during the litigation.

86. The harm to Plaintiff and the class was "physical" in the sense that it

25.

affected her emotional and mental health, rather than being a purely economic harm. (*State Farm v. Campbell* 538 U.S. 308 at p. 419.) It was objectively reasonable to assume that Defendants employers', managing agents, acts of discrimination and harassment and retaliation toward Plaintiff and the class would affect their emotional well-being, and therefore Defendants "conduct evinced an indifference to or a reckless disregard of the health or safety of others." Plaintiff and the class quickly depleted their savings and lost their medical insurance as a result of termination, and therefore it appears that they "had financial vulnerability." *Roby v. McKesson* (2009)47 Cal. 4th 686;

87. As a result of the discriminatory acts of Defendants their agents and alter egos, and each of them, as alleged herein, Plaintiff and the class is entitled to reasonable attorneys' fees and costs of said suit .Plaintiff and the Class have suffered general damages in an amount within the jurisdiction of this Court.

## SECOND CAUSE OF ACTION

### (For AGE DISCRIMINATION AGAINST SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC. And DOES 1 through 10, Inclusive)

88. Plaintiff repeats and re-pleads the First Cause of Action, as though set forth in full herein and incorporates all of the same as though set forth in full herein. At all times herein mentioned, SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE, INC.; and Does 1 through 10 were Plaintiff and the class' employer, joint employer, successor corporation, alter ego, and were qualified employers under the Labor Code acting within the

SECOND AMENDED COMPLAINT FOR DAMAGES

1   course and scope of that employment.

2   89. At all times herein mentioned, SCOTTRADE, INC.; SCOTTRADE

3   INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL

4   SERVICE INC.; TD AMERITRADE, INC and DOES 1 through 10

5   [hereinafter EMPLOYER DEFENDANTS], were Plaintiff and the class's

6   employer, and were qualified employers under the FEHA acting within the

7   course and scope of that employment. PLAINTIFF and the class at all times

8   was a covered eligible employee as defined in the sections set forth above.

9   90. PLAINTIFF and the class is informed and believes, and thereon alleges, that

10  at all times relevant herein, that DEFENDANTS and DOES 1 through 10

11  were the owners, managing agents, alter ego or were acting as the agent,

12  managing agent, principal, owner, partner, joint venture, representative,

13  supervisor, manager, servant, employee and/or co-conspirator of each of the

14  other DEFENDANTS, and were at all times mentioned herein acting within

15  the course and scope of said agency and employment, and that all acts or

16  omissions alleged herein were duly committed with the ratification,

17  knowledge, permission, encouragement, authorization and consent of each

18  DEFENDANT designated herein.

19  91. PLAINTIFF and the class is ignorant of the true names and capacities,

20  whether corporate, associate, individual or otherwise, of DEFENDANTS

21  sued herein as DOES 1 through 10, Inclusive, and therefore sues said

22  DEFENDANTS, and each of them, by such fictitious names. PLAINTIFF

23  and the class will seek leave of court to amend this Complaint to assert the

24  true names and capacities of the fictitiously named DEFENDANTS when

25  the same have been ascertained. PLAINTIFF and the class is informed and

26  believes, and thereon alleges, that each DEFENDANT designated as a

27  "DOE" herein is legally responsible for the events, happenings, acts,

28

27.

occurrences, indebtedness, damages and liabilities hereinafter alleged and caused injuries and damages proximately thereby to the PLAINTIFF and the class, as hereinafter alleged.

92. At all times herein mentioned, PLAINTIFF and the class were employed by EMPLOYER DEFENDANTS.

93. Plaintiff and the class both men and women who were over the age of 40 (Plaintiff was 57 years old) and the class who were over the age of 40 were targeted for termination in part because of their age. DEFENDANTS decided they wanted to get rid of the older managers and replace them with younger male employees, despite the fact that Plaintiff and the class had been a loyal and hardworking employee for many years they targeted Plaintiff and the class just because of their age.

94. The identity of all Defendants and Does 1 through 10, including managing agents and supervisors involved in the ratification of the harassment, discrimination and retaliation as well as any other entities such as alter egos, joint employers, principals, agents, subsidiaries or parent corporations are not fully known to Plaintiff at this time. Defendants have that information within their possession custody and control and complainant will have to file a lawsuit and conduct discovery to obtain the information. Plaintiff and the class reserves the right to name any later discovered managing agents, supervisors, alter egos, joint employers, principals, agents, subsidiaries or parent corporations upon discovery of their identity as additional Defendants, since Plaintiff would not be able to file a FEHA claim against these newly discovered Defendants, Plaintiff and the class reserves the right to add them as DOES 1 through 10 without filing a FEHA claim first.

95. It is believed that Employer Defendants had a pattern and practice of harassment, discrimination, and retaliation and that information is also

28.

SECOND AMENDED COMPLAINT FOR DAMAGES

1    within the Employer Defendants control at this time and would not be

2    available to plaintiff and the class until after a lawsuit is filed.

3    96. Other facts and information which are equally or exclusively within the

4    possession and control of Employer Defendants which are learned after the

5    lawsuit has been filed are incorporated herein by reference as though set

6    forth in full herein.

7    97. Plaintiff and the class who were over 40, branch managers and other female

8    managers over 40 also were denied the ability to advance their careers,

9    because of their age and gender. Younger managers and branch managers

10    were given better opportunities were held to lesser standards, had issues

11    overlooked and brushed under the rug. However, when the Employer

12    Defendants wanted to get rid of  older branch managers or managers and

13    replace them with younger managers, they would unfairly discipline the

14    female managers for things they did not discipline the male managers for.

15    They did this to try and get the older managers to quit and sometimes it

16    worked. However if the older managers or branch managers refused to be

17    driven from their jobs they were terminated unfairly.

18    98.  Janice Kevari had been a loyal and hardworking employee of Employer

19    Defendants for over 10 plus years. She worked her way up to branch

20    manager and then continued to work day and night and had the most

21    successful branch. She also had the largest office in the region to oversee

22    and still managed to keep it on top. However, in approximately 2015 a new

23    Regional Manager was assigned to her district, Ed Sturdivant, who reported

24    to the Divisional Manager Gary DeSalvo. Immediately, Sturdivant began to

25    go after Plaintiff and to criticize her for issues that were not within her

26    control, or that he did not criticize or discipline the male managers for. He

27    was setting out to get rid of Plaintiff. Plaintiff was told that she "had a target

28

29.

on her back". Sturdivant claimed that Plaintiff had poor performers in her branch and she was not coming down hard enough on them. Plaintiff spoke to other branch managers who were men who told her that they had poor performers in their branch and Mr. Sturdivant was supportive of them and did not criticize them.

99. From the time Sturdivant took over, Plaintiff noticed she was under much greater scrutiny and that he and those he supervised were looking for a way to get rid of Plaintiff, or to try and make her workplace hostile so that she would leave. Plaintiff noticed that other older female branch managers in other locations were also being forced to resign to save their reputations from unwarranted criticism that was being unfairly leveled at them and not the men.

100. In January 2016, Sturdivant came to Plaintiff's branch and interviewed her employees. There were low performing employees (male) Mark, Adam and Matt. They knew their jobs were in jeopardy when Sturdivant completed his visit. The next day in speaking with one of the low performing employees, the employee whose job was in jeopardy told Plaintiff that "it will be different without you around here".

101. On January 14, 2016, shortly after Sturdivant's visit and meeting with Mark, Adam and Matt, Mark called the ethics hotline and reported false allegations against Plaintiff that allegedly took place two years before. Mark said in his complaint he wanted "the record to reflect the incidents". It was not until after Mark met with Sturdivant that he made a complaint about incidents that allegedly occurred two years before.

102. On February 2, 2016 Sturdivant met with Ms. Kevari and Human Resources. Plaintiff told him that she has some concerns about her treatment and was going to go to Human Resources to report them. Sturdivant then gives her

SECOND AMENDED COMPLAINT FOR DAMAGES

"examples" of some of the allegations from the employees who were the low performing employees whose jobs were in jeopardy and which allegedly occurred years before. Plaintiff told him the statements they claim she made are not true. Ms. Kevari then called Human Resources to complain that she felt Sturdivant was discriminating against her and unfairly criticizing her because she is a female and she is older.

103. On February 4, 2016 Employer Defendants terminated Plaintiff.

104. The Employer Defendants terminated the branch managers and managers who were over the age of 40 and replaced them with younger employees who were under the age of 40 and less qualified.

105. Defendants and each of them, and unknown Does 1 through 10, inclusive, acts and the acts of its managerial employees as hereinbefore described were illegal, in violation of FEHA, and were committed maliciously, fraudulently or oppressively with the intent of injuring complainant, and/or with a willful and conscious disregard of Plaintiff' and the Class' right to work in an environment free from retaliation, harassment, and discrimination based on her sex/gender. Plaintiff and the Class reserves the right to amend and or supplement this complaint upon discovery of additional facts and information.

106. Plaintiff and the class do not have access to all of this information and the information will be the subject of discovery by the Plaintiff and the class which can only begin after a lawsuit is filed.

107. A motivating factor in Plaintiff's and the class' termination was their age as they were over 40 and within the protected class.

108. Defendants' actions were in violation of Government Code 12940 et seq. which prohibits discrimination based on age.

109. Plaintiff timely filed a complaint with the Department of Fair Employment

31.

and Housing (Hereinafter the "DFEH") against DEFENDANTS for Violation of the FEHA and received her Right to Sue. Plaintiffs' counsel sent to Defendants the Right to Sue Letter and provided defendants with notice of the right to sue in February 2017. Therefore Plaintiff and the Class have therefore exhausted their administrative remedies.

110. FEHA codified at Government Code §12900 et seq. §12940 and §12941 prohibits among other things, harassment, discrimination, retaliation in employment on account of certain protected classifications, including a person's age, and further the FEHA requires an investigation into allegations of harassment and discrimination.

111. Government Code §12941 provides in part:

> The Legislature further reaffirms and declares "its intent that the courts interpret the State's Statutes prohibiting age discrimination in employment broadly and vigorously, in a manner comparable to prohibitions against sex and race discrimination, and with the goal of not only protecting older workers as individuals, but also of protecting older workers as a group, since they face unique obstacles in the later phases of their careers."

112. As set forth, defendants had a pattern and practice of terminating older employees and replacing them with younger employees and that actions once tolerated and part of corporate policy were then used against the older employees as pretext for their termination. Defendants actions towards the class of employees over the age of 40 was in violation of The Age Discrimination in Employment Act of 1967

113. The class is entitled to punitive damages as set forth herein. Plaintiff timely filed charges with the EEOC before filing this lawsuit.

114. As a direct and legal result of the aforesaid acts and conduct of DEFENDANTS, and each of them, Plaintiff and the class and the class has

32.

SECOND AMENDED COMPLAINT FOR DAMAGES

been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which Plaintiff and the class will seek leave of court to amend when ascertained.

115. As a direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the Class have been caused, and did suffer, and continue to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff and the class, who will pray leave of court to assert the same when they are ascertained.

116. As a further direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the Class have been caused to suffer and did suffer a loss of earnings, earning capacity, medical benefits, including insurance and other benefits to which she was entitled. The exact nature and extent of said injuries is presently unknown to Plaintiff and the class, who will pray leave of court to assert the same when they are ascertained.

117. Plaintiff and the Class have been generally damaged in an amount within the jurisdictional limits of this court.

118. The aforementioned acts of Defendants and its alter egos, committed by and through their managing agents, supervisors, were done with the knowledge of Defendants and its alter egos and or were ratified and condoned by Defendants and their alter egos, and each of them, were willful, wanton, malicious, intentional, oppressive, illegal and despicable and were done in

SECOND AMENDED COMPLAINT FOR DAMAGES

willful and conscious disregard of the rights, welfare and safety of Plaintiff and the class, and were done by managerial agents of Defendants and its alter egos, and Does 1 through 10, and with the express knowledge, consent, and ratification of managerial employees of Defendants and its alter egos, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial. The discrimination and termination of Plaintiff and the class was motivated at least in part by her gender, the actions were in conscious disregard of her rights and in violation of FEHA. The discrimination and termination of Plaintiff and the class was devised by Defendants and, was ratified and condoned by Defendants. Not only was the discrimination and termination of Plaintiff and the class illegal, it was also in direct violation of the policies defendants set forth in their own policies preventing discrimination. The Defendants and their managing agents and alter ego's conduct as set forth herein was reprehensible.

119.  Plaintiff and the class believe that Employer defendants had a pattern and practice of discriminating against older managers based on their age and especially older female managers, although the age discrimination was not limited only to female managers. Plaintiff and the class believes she was one of many older managers (male and female) who were terminated and replaced with younger less qualified managers.

120. The information regarding other older managers (male and female) is in the exclusive possession of Employer Defendants and Plaintiff and the Class believe it may be the subject of spoliation, modification or refusal to produce the information by the Employer Defendants. Plaintiff and the class will seek all appropriate remedies if this is the case or occurs during the litigation.

121. The harm to Plaintiff and the class was "physical" in the sense that it

SECOND AMENDED COMPLAINT FOR DAMAGES

affected their emotional and mental health, rather than being a purely economic harm. (*State Farm v. Campbell* 538 U.S. 308 at p. 419.) It was objectively reasonable to assume that Defendants employers', managing agents, acts of discrimination and harassment and retaliation toward Plaintiff and the class would affect their emotional well-being, and therefore Defendants "conduct evinced an indifference to or a reckless disregard of the health or safety of others." Plaintiff and the class quickly depleted their savings and lost their medical insurance as a result of termination, and therefore it appears that she "had financial vulnerability." *Roby v. McKesson* (2009) 47 Cal. 4th 686.

122. As a result of the discriminatory acts of Defendants their agents and alter egos, and each of them, as alleged herein, Plaintiff and the class is entitled to reasonable attorneys' fees and costs of said suit .

123. PLAINTIFF has suffered general damages in an amount within the jurisdiction of this Court.

## THIRD CAUSE OF ACTION

**(FOR VIOLATION OF THE EQUAL PAY ACT AGAINST DEFENDANTS SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC. ;TD AMERITRADE INC. and DOES 1 Through 10, Inclusive)**

124. At all times herein, SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE, INC.; and Does 1 through 10 did business in Los Angeles in the State of California and throughout the United States.

125. Plaintiff and the Class members are informed and believe that as of November 2017, TD Ameritrade acquired Scottrade, Inc. and its related entities and is currently combining the two entities under the name TD

SECOND AMENDED COMPLAINT FOR DAMAGES

Ameritrade. As set forth herein, TD Ameritrade, Inc./ Scottrade Inc have the relationship of successor corporation, a joint venture, an alter ego, a joint employer, merged corporations, or a joint venture. The specific facts of the merger/purchase of Scottrade, Inc. by TD Ameritrade, Inc. are within Defendants custody and control and subject to discovery. At all times herein mentioned, DEFENDANTS AND DOES 1 through 10, were Alter Egos, Franchisors, Franchisees, Joint Ventures, and Joint Employers. Defendants Ameritrade Inc. has filed a certificate of interested parties identifying Scottrade Inc. as its subsidiary.

126. At all times herein mentioned, SCOTTRADE, INC.; SCOTTRADE INVESTMENT MANAGEMENT INC.; SCOTTRADE FINANCIAL SERVICE INC.; TD AMERITRADE INC., and DOES 1 through 10, [hereinafter EMPLOYER DEFENDANTS] were Plaintiff and the Class members employer, joint employer, alter egos of each other, joint ventures, successor corporations, merged corporations, wholly own subsidiaries, and or entities and at all times were acting within the course and scope of that employment

127. PLAINTIFF and the Class members are informed and believes, and thereon alleges, that at all times relevant herein, that DEFENDANTS and DOES 1 through 10 were the owners, managing agents, alter ego or were acting as the agent, managing agent, principal, owner, partner, joint venture, alter ego, subsidiary, representative, supervisor, manager, servant, employee and/or co-conspirator of each of the other DEFENDANTS, and were at all times mentioned herein acting within the course and scope of said agency and employment, and that all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and consent of each DEFENDANT designated herein.

SECOND AMENDED COMPLAINT FOR DAMAGES

128. PLAINTIFF and the class members are ignorant of the true names and capacities, whether corporate, associate, individual or otherwise, of DEFENDANTS sued herein as DOES 1 through 10, Inclusive, and therefore sues said DEFENDANTS, and each of them, by such fictitious names. PLAINTIFF and the class members will seek leave of court to amend this Complaint to assert the true names and capacities of the fictitiously named DEFENDANTS when the same have been ascertained. PLAINTIFF and class members are informed and believe, and thereon alleges, that each DEFENDANT designated as a "DOE" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages and liabilities hereinafter alleged and caused injuries and damages proximately thereby to the PLAINTIFF and class members, as hereinafter alleged.

129. At all times herein mentioned, PLAINTIFF and class members were employed by EMPLOYER DEFENDANTS.

130. Plaintiff and class members, who were females, had worked twice as hard to prove themselves, to succeed and to achieve, they sacrificed having a family and dedicated their time and energy to Employer Defendants, and all of that was ignored when the supervisors would discriminate against Plaintiff and class members based on their sex/gender and deny them equal pay as the men.

131. Employer Defendants devalued the female managers and paid male managers who were performing the substantially equal jobs in performance and content, regardless of the titles given, women would be paid less than the men.

132. The identity of all Defendants, and Does 1 through 10, including managing agents and supervisors involved in the ratification of the harassment, discrimination and retaliation as well as any other entities such as alter egos,

37.

SECOND AMENDED COMPLAINT FOR DAMAGES

joint employers, principals, agents, subsidiaries or parent corporations are not fully known to Plaintiff and Class Members at this time. Defendants have that information within their possession custody and control and complainant will have to file a lawsuit and conduct discovery to obtain the information. Plaintiff and class members reserves the right to name any later discovered managing agents, supervisors, alter egos, joint employers, principals, agents, subsidiaries or parent corporations upon discovery of their identity as additional Defendants

133. It is believed that Employer Defendants had a pattern and practice of denying their female employees Equal Pay and that information is also within the Employer Defendants control at this time and would not be available to complainant until after a lawsuit is filed.

134.  Other facts and information which are equally or exclusively within the possession and control of Employer Defendants which are learned after the lawsuit has been filed are incorporated herein by reference as though set forth in full herein.

135. Plaintiffs and the female class members nationwide and California who were denied equal pay under the Equal Pay Act 29 USC§206(d)(1) et seq,

136. Defendants and each of them, and unknown Does 1 through 10, inclusive, acts and the acts of its managerial employees as hereinbefore described were illegal, in violation of FEHA, and were committed maliciously, fraudulently or oppressively with the intent of injuring complainant, and/or with a willful and conscious disregard of Plaintiff' and the Class right to work in an environment free from retaliation, harassment, and discrimination based on their sex/gender. Plaintiff and the class reserve the right to amend and or supplement this complaint upon discovery of additional facts and information.

SECOND AMENDED COMPLAINT FOR DAMAGES

137. Plaintiff and the Class does not have access to all of this information and the information will be the subject of discovery by the Plaintiff and the class which can only begin after a lawsuit is filed.

138. A motivating factor in Plaintiff and the class's termination and mistreatment was their gender (female).

139. Defendants' actions were in violation of The Equal Pay Act of 1963, and Plaintiff's and the Class are entitled to punitive damages pursuant to, Sections 102 and 103 of the Civil Rights Act of 1991.

140. As a direct and legal result of the aforesaid acts and conduct of DEFENDANTS, and each of them, Plaintiff and the Class have been directly and legally caused to suffer actual damages pursuant to including, but not limited to, loss of earnings and future earning capacity, medical and related expenses for care and procedures both now and in the future, attorney's fees, and other pecuniary loss not presently ascertained, for which Plaintiff and the class will seek leave of court to amend when ascertained.

141. As a direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the Class have been caused, and did suffer, and continue to suffer severe and permanent emotional and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety.

142. As a further direct and legal result of the acts and conduct of DEFENDANTS, as aforesaid, Plaintiff and the Class have been caused to suffer and did suffer a loss of earnings, earning capacity, medical benefits, including insurance and other benefits to which they are entitled. The exact nature and extent of said injuries is presently unknown to Plaintiff and the class, who will pray leave of court to assert the same when they are ascertained.

SECOND AMENDED COMPLAINT FOR DAMAGES

143. Plaintiff and the Class have been generally damaged in an amount within the jurisdictional limits of this court.

144. The aforementioned acts of Defendants and its alter egos, committed by and through their managing agents, supervisors, were done with the knowledge of Defendants and its alter egos and or were ratified and condoned by Defendants and their alter egos, and each of them, were willful, wanton, malicious, intentional, oppressive, illegal and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff and the class, and were done by managerial agents of Defendants and its alter egos, and Does 1 through 10, and with the express knowledge, consent, and ratification of managerial employees of Defendants and its alter egos, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial. The failure to pay Plaintiff and the class equal pay as their male counterparts was motivated at least in part by their gender, the actions were in conscious disregard of her rights and in violation of the law was ratified and condoned by Defendants. Not only was the discrimination and termination of Plaintiff and the class illegal, it was also in direct violation of the policies defendants set forth in their own policies preventing discrimination. The Defendants and their managing agents and alter ego's conduct as set forth herein was reprehensible.

145. Plaintiff and the class believes that Employer defendants had a pattern and practice of refusing to pay female managers equally to male managers in base pay, commissions, bonuses and promotional pay. Plaintiff and the class believes that defendants then treated women managers much harsher than men, criticized them unfairly and this was a known and accepted culture at Employer Defendants.

146. The information regarding other the compensation including pay,

40.

SECOND AMENDED COMPLAINT FOR DAMAGES

commissions, bonuses, salary and promotional pay to male and female managers is in the exclusive possession of Employer Defendants and plaintiff and the class believe it may be the subject of spoliation, modification or refusal to produce the information by the Employer Defendants. Plaintiff and the class will seek all appropriate remedies if this is the case or occurs during the litigation.

147. The harm to Plaintiff and the class was "physical" in the sense that it affected her emotional and mental health, rather than being a purely economic harm. (*State Farm v. Campbell* 538 U.S. 308 at p. 419.) It was objectively reasonable to assume that Defendants employers', managing agents, acts of discrimination and harassment and retaliation toward Plaintiff and the class would affect their emotional well-being, and therefore Defendants "conduct evinced an indifference to or a reckless disregard of the health or safety of others." Plaintiff and the class quickly depleted their savings and lost their medical insurance as a result of termination, and therefore it appears that they "had financial vulnerability." *Roby v. McKesson* (2009)47 Cal. 4th 686;

148. As a result of the discriminatory acts of Defendants their agents and alter egos, and each of them, as alleged herein, Plaintiff and the class is entitled to reasonable attorneys' fees and costs of said suit.

149. Plaintiff and the Class have suffered general damages in an amount within the jurisdiction of this Court.

///
///
///
///
///

41.

## **JURY TRIAL DEMAND**

The Plaintiff hereby demands a trial by jury.

## **PRAYER**

WHEREFORE, the Plaintiff prays for judgment against the DEFENDANTS, and each of them and Does 1 through 10, as follows:

AGAINST ALL DEFENDANTS AND DOES 1 THROUGH 10:

1.  For general damages in an amount within the jurisdictional limits of this court;

2.  For medical expenses and related items of expense, according to proof;

3.  For loss of earnings, earning capacity and benefits, according to proof;

4.  For attorneys' fees according to proof;

5.  For prejudgment interest according to proof;

6.  For costs of suit incurred herein; and

7.  For interest as allowed by law and

8.  For all penalties as permitted under the law

9.  For Special Damages as permitted by Statute

10. For such other and further relief as the court may deem just and proper.

11. For exemplary and punitive damages in an amount according to proof.

Dated: June 19, 2018          The Law Offices of Maryann P. Gallagher


                              By:    /s/ Maryann P. Gallagher
                                     MARYANN P. GALLAGHER
                                     Attorney for Plaintiff

42.