**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 18-819-JFW(GJSx)** | Date: August 31, 2018 |

Title:       Janice Kevari, et al. *-v-* Scottrade, Inc., et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING SCOTTRADE, INC. AND TD AMERITRADE INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [filed 7/3/18; Docket No. 64]; and**

**ORDER GRANTING MOTION TO STRIKE CERTAIN CLASS ALLEGATIONS IN PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f) [filed 7/3/18; Docket No. 65]**

      On July 3, 2018, Defendants Scottrade, Inc. ("Scottrade") and TD Ameritrade Inc. ("Ameritrade") (collectively, "Defendants") filed a Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") and a Motion to Strike Certain Class Allegations in Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(f) ("Motion to Strike"). On July 23, 2018, Plaintiff Janice Kevari ("Plaintiff") filed her Oppositions. On July 30, 2018, Defendants filed Replies. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument. The matters were, therefore, removed from the Court's August 13, 2018 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.       Factual and Procedural Background**

Plaintiff, a female who at all relevant times was over the age of 40, was employed by Scottrade for over ten years before she was terminated on February 4, 2016. On February 1, 2017, Plaintiff filed a complaint with the California Department of Fair Employment & Housing ("DFEH"), alleging that she was the victim of disparate treatment in the form of age, sex, and gender discrimination in violation of the California Fair Employment and Housing Act ("FEHA"). Defendants' Request for Judicial Notice ("RJN"), Exh. 2.[1] Plaintiff obtained a "Right to Sue Letter" from the DFEH on the same day. *Id.* On April 6, 2018, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). RJN, Exh. 3.

On January 31, 2018, Plaintiff filed this putative class action as well as a parallel individual action in state court that Defendants subsequently removed to this Court, entitled *Kevari v. Scottrade, Inc., et al.*, Case No. 18-CV-5058-JFW (GJSx) (the "Removed Action"). RJN, Exh. 1. In this action, Plaintiff alleges that she was terminated so that she could be replaced by a younger male employee, and that Defendants denied her equal pay on the basis of her gender. Plaintiff also alleges that her employer had a pattern and practice of discriminating against female employees and employees over the age of 40. In her Second Amended Complaint, Plaintiff alleges causes of action for: (1) gender (female sex) discrimination in violation of FEHA, and Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) age discrimination in violation of FEHA and the Age Discrimination in Employment Act of 1967 ("ADEA"); and (3) violation of the Equal Pay Act of 1963. Plaintiff brings her claims individually and as a class representative on behalf of variously defined classes.[2]

**II.      Motion to Dismiss**

  **A.      Legal Standard**

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

---

   [1] Plaintiffs' unopposed Request for Judicial Notice is **GRANTED**.

   [2] In the Removed Action, Plaintiff brings individual causes of action for: (1) gender (female sex) discrimination; (2) age discrimination; (3) wrongful termination in violation of public policy; and (4) defamation: libel and slander.

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations."  *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).  However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment.  *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend.  Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility.  *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

**B.     Discussion**

    **1.     Plaintiff Failed to Exhaust Her Administrative Remedies as to Her Title VII and ADEA Claims.**

        **a.     Plaintiff Failed to File a Timely Charge with the EEOC.**

In her first cause of action for gender (female sex) discrimination, Plaintiff alleges that Defendants' purported actions were in violation of FEHA and Title VII.  SAC, ¶ 76.  In her second cause of action for age discrimination, Plaintiff alleges that Defendants' purported actions were in violation of FEHA and the ADEA.  SAC ¶ 112.  In order to pursue Title VII and ADEA claims, Plaintiff was required to file a charge with the EEOC within 180 days after the unlawful employment action or practice occurred or, if she initially instituted proceedings with a state or local administrative agency, within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1999 (9th Cir. 2002); *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir. 1990).

In this case, Plaintiff's employment with Scottrade ended on February 4, 2016.  SAC, ¶ 103.  Therefore, the latest date that Plaintiff could have timely filed with the EEOC was November 30, 2016, or 300 days after the date of her termination.  However, Plaintiff missed the filing deadline by almost a year and a half because she did not file her EEOC complaint until April 6, 2018.  RJN Exh. 3.

Recognizing that the deadline to file a complaint with the EEOC had expired, Plaintiff argues that she timely exhausted her Title VII and ADEA claims because her charges filed with the DFEH on February 1, 2017 should be deemed "constructively filed" with the EEOC. However, even if Plaintiff's DFEH complaint could be deemed constructively filed with the EEOC, Plaintiff's federal Title VII and ADEA claims must still be dismissed as untimely because by the time Plaintiff filed her DFEH complaint, the 300 day deadline to exhaust Title VII and ADEA claims had already expired. *See EEOC v. Dinuba Medical Clinic*, 222 F.3d 580, 585 (9th Cir. 2000). In this case, It is undisputed that Plaintiff did not file her DFEH complaint until February 1, 2017, approximately 63 days after the 300 day deadline expired. RJN, Exh. 2. Thus, even under her "constructively filed" theory, Plaintiff's DFEH complaint was untimely as to any Title VII and ADEA claims, and, therefore, Plaintiff's Title VII and ADEA claims are dismissed.

### b. The "Continuing Violation" Exception Does Not Apply.

Plaintiff also argues that her Title VII and ADEA claims were timely brought before an administrative agency because she has alleged a "pattern and practice" of discrimination and a "continuing violation." Opposition, p. 11. However, the Ninth Circuit has held that "the continuing violations doctrine does not apply to employee termination cases." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 238 (9th Cir. 1991). The continuing violation doctrine is "intended to allow a victim of systematic discrimination to recover for injuries that occurred outside the applicable limitations period, as where an employee has been subject to a policy against the promotion of minorities." *Id.* The termination of employment "differs markedly in that the employee is severed from an ongoing relationship with the employer." *Id.* Thus, "the continuing violation doctrine is not available in cases involving employment termination." *Saunders v. Rams Specialized Sec. Servs.*, 2014 WL 4536927 (D. Or. Sept. 11, 2014) (*quoting Villone v. United Parcel Servs., Inc.*, 2011 WL 4402954, at *7 (D. Ariz. Sept. 22, 2011), *aff'd* 540 Fed. Appx. 798 (9th Cir. 2013)). "It is the continuity of the employment relationship that sustains the violation, and when that relationship is severed [*i.e.*, when the employment is terminated], the violation ceases." *Id.*

After Plaintiff's employment from Scottrade was terminated, any purported violations ceased as to her and she could not have been affected by any post-termination violations. Therefore, the continuing violation doctrine is inapplicable.

### c. Plaintiff's April 6, 2018 EEOC Complaint Was Untimely as to the Class Plaintiff Purports to Represent.

Plaintiff appears to argue that even if she failed to timely exhaust her individual Title VII and ADEA claims, her April 6, 2018 EEOC complaint was timely with respect to the class claims because other employees have allegedly suffered violations within the limitations period. However, Plaintiff fails to acknowledge the requirement that at least one named class member must have timely exhausted his or her administrative remedies. *Snell v. Suffolk County*, 782 F.2d 1094, 1101 (2d Cir. 1986). In this case, Plaintiff is the only named class member and, as explained above, she failed to timely exhaust her Title VII and ADEA claims.

Accordingly, Plaintiff's Title VII and ADEA claims, both on behalf of herself and on behalf of the class, are dismissed without leave to amend because Plaintiff cannot cure her failure to exhaust her administrative remedies with respect to these claims.

### 2. Plaintiff Failed to Exhaust her FEHA Class Claims.

In order to bring a class action under the FEHA, Plaintiff is also required to exhaust her administrative remedies. *Romano v. Rockwell Int'l Inc.*, 14 Cal.4th 479, 492 (1996). In order to exhaust his or her administrative remedies, a plaintiff must file a complaint with the DFEH within one year from the date upon which the alleged unlawful conduct occurred. California Government Code § 12960(b) & (d). Although the charge need not explicitly mention class claims, "the representative plaintiff's charge must be expressed in a manner such that there is a reasonable expectation that an investigation of class claims could grow out of plaintiff's charges." *MacDevitt v. Cal. Pizza Kitchen*, 2009 WL 10675200, at *4 (C.D. Cal. Oct. 6, 2009) (*citing Paige v. State of Cal.*, 102 F.3d 1035, 1042 (9th Cir. 1996).

In this case, Plaintiff filed her DFEH complaint on February 1, 2017 – the last possible date to timely file. However, Plaintiff made no mention of class claims and failed to provide any notice that she intended to bring an action on behalf of a class. RJN, Ex. 2. As in *MacDevitt*, each and every allegation in Plaintiff's DFEH complaint related solely to Plaintiff. For example, Plaintiff lists all the adverse actions she claims were taken against her and the protected classes of which she claims to be a member. *Id.* Although Plaintiff did state what she believed was the motivation for her termination and complains that she was subject to disparate treatment, she failed to allege, much less provide any factual support, for her belief that other similarly situated individuals had suffering the same treatment. *Id.* In addition, even though Plaintiff alleged that Defendants engaged in a pattern and practice of discrimination, this conclusory allegation was made in the context of her individual charge of discrimination.

Plaintiff also admits in her Opposition that she only filed a class complaint with the EEOC and not the DFEH. However, as explained above, Plaintiff's EEOC complaint was untimely. RJN, Exh. 3. Thus, Plaintiff's class claims were not filed until after the deadline expired.

Accordingly, Plaintiff's class claims are dismissed without leave to amend because the deadline for Plaintiff to exhaust her claims has already expired.

### 3. Plaintiff Failed to Exhaust Her Disparate Impact Claims.

In her Second Amended Complaint, Plaintiff alleges discrimination claims based on a theory of disparate impact as well as disparate treatment. SAC, ¶ 26. However, disparate treatment and disparate impact discrimination claims are separate and distinct. "Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). On the other hand, disparate impact "arises when 'some employment practices, [usually facially neutral,] adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination.'" *Cummings v. Valley Health Sys., LLC*, 2016 WL 590455 (D. Nev. Feb. 11, 2016) (*quoting Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 988 (1988)). Because disparate treatment and disparate impact claims are based on entirely different theories, "a party cannot rely on allegations supporting one to administratively exhaust the other." *Lindsey v. United Airlines, Inc.*, 2017 WL 2404911, at *6 (N.D. Cal. June 2, 2017) (*citing Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729-30 (9th Cir. 1984)).

In her DFEH complaint, Plaintiff alleged only that Defendants deliberately discriminated against her on the basis of age and gender, and that Defendants took adverse actions against her "because of" and "based on" her gender and age.  RJN, Exh. 2.  Plaintiff also alleged that her termination was motivated by Defendants' alleged discrimination and that Defendants "engaged in disparate treatment towards her based on" on her age and gender.  *Id.*  Although these allegations state a claim for disparate treatment, they do not state a claim for disparate impact.  In addition, there is no mention whatsoever in Plaintiff's DFEH complaint of any facially neutral policies that were arguably adopted without discriminatory intent but fell more harshly on female employees or employees over the age of 40.  Thus, the allegations in Plaintiff's DFEH complaint cannot reasonably be interpreted as alleging disparate impact, and Plaintiff's allegations that Defendants "had a pattern and practice of harassment, discrimination, and retaliation" do not support Plaintiff's argument because a pattern and practice is not the same as a facially neutral policy.

Accordingly, Plaintiff failed to exhaust any claims based on disparate impact in her DFEH complaint and Plaintiff's disparate impact claims are dismissed without leave to amend because the deadline for Plaintiff to exhaust her claims has expired.

### 4.     Plaintiff Failed to Allege an Equal Pay Act Claim.

The Equal Pay Act, 29 U.S.C. section 206, "prohibits an employer from engaging in sex-based wage discrimination by paying different wages to employees of different sexes within any establishment for jobs that require substantially equal skill, effort and responsibility, and which are performed under similar working conditions."  *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1463-64 (9th Cir. 1985) (*citing Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).  To allege an Equal Pay Act claim, a plaintiff must allege facts showing that employees of the opposite sex are: (1) working in the same establishment; (2) doing work requiring equal skill, effort, and responsibility, and which is performed under similar working conditions; and (3) receiving unequal pay because of their sex.  *Williams v. Chu*, 2010 WL 11575517 (D.D.C. Sep. 30, 2010).  The elements of an Equal Pay Act claim must be satisfied with allegations of "specific facts."  *McCann v. Haven*, 2010 WL 4103669, at *7 (D.N.J. Oct. 18, 2010).  Where a plaintiff fails to allege such facts, dismissal is appropriate.  *Barrett v. Forest Labs, Inc.*, 39 F. Supp. 3d 407, 452 (S.D.N.Y. 2014).

In this case, the parties agree on the elements of an Equal Pay Act claim.  However, Plaintiff relies on a formalistic recitation of these elements in her Second Amended Complaint without any supporting factual allegations.  *Unger v. City of Mentor*, 387 Fed. App'x 589, 595 (6th Cir. July 21, 2010) ("[Plaintiff's] sex discrimination claim under the Equal Pay Act also fails.  Her complaint cites nothing more than the claim's legal elements, neglecting to provide any factual basis in support").  In her Opposition, Plaintiff simply argues in conclusory fashion that "male managers were paid different wages for equal work," but does not cite any facts supporting this threadbare, conclusory allegation.

Accordingly, Plaintiff's Equal Pay Act claim is dismissed without leave to amend because Plaintiff has had numerous opportunities to amend but has failed to allege sufficient facts to support her Equal Pay Act claim.

### 5. Plaintiff Failed to Plead Ameritrade's Alter Ego Liability.

In her Second Amended Complaint, Plaintiff alleges that she was employed by Scottrade, and her allegations of wrongdoing pertain only to Scottrade's purported actions. SAC, ¶ 8. In addition, Plaintiff alleges that Ameritrade was a separate company until it acquired Scottrade in November 2017, nearly two years after Plaintiff was terminated from Scottrade, and the two companies merged. SAC, ¶ 59. Plaintiff then alleges in conclusory fashion that Ameritrade is liable under theories of successor liability, alter ego liability, and agency. "Successor liability, agency, and alter-ego are three distinct concepts that arise in distinct circumstances." *Evervictory Elec. (B.V.I.) Co. v. Invision Indus.*, 2012 WL 2030177, at *5 (C.D. Cal. June 4, 2012) (*citing Butler v. Adopts Media, LLC*, 486 F. Supp. 2d 1022, 1063-71 (N.D. Cal. 2007)). Successor liability arises when one "corporation sells or transfers all its assets to another corporation" and "(1) there is an express or implied agreement of assumption [of liability]; (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability of the seller's debts." *Butler*, 486 F. Supp. 2d at 1063.

On the other hand, alter ego liability "arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Id.* at 1067 (*quoting Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985)). Alter ego liability arises from misuse of the corporate form, not from perfectly legitimate corporate transactions such as mergers and acquisitions. *Id.* ("The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds"). Before the alter ego doctrine may be invoked, a plaintiff must alleges facts showing: (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist; and (2) "there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Aliya Medcare Fin., LLC v. Nickell*, 2015 WL 11072180, at *64 (C.D. Cal. Sept. 25, 2015) (*quoting Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300 (1985)). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Instead, a plaintiff must allege specific facts supporting both of the elements of alter ego liability." *Id.*; *see also Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (collecting cases holding that conclusory allegations of alter ego liability are "insufficient to state a claim"). California courts have identified a number of factors that can show misuse of the corporate form, such as commingling of funds or other assets, failure to observe corporate formalities, concealment of ownership, and inadequate capitalization. *Butler*, 486 F. Supp. 2d at 1067.

In this case, Plaintiff does not allege, nor could she, that Ameritrade and Scottrade misused their respective corporate forms in such a manner that it would be unjust to treat the two entities as separate with regard to Scottrade's alleged wrongful actions. In fact, Plaintiff does not even attempt to allege facts that would plausibly demonstrate the existence of alter ego liability and, instead, merely argues that the allegations in her Second Amended Complaint are sufficient.[3]

---

[3] Plaintiff's theories of liability based on agency and joint venture are also dismissed because Plaintiff does not allege the existence of any relationship between Scottrade and

Accordingly, Plaintiff's alter ego, agency, and joint venture theories of liability against Ameritrade are dismissed without leave to amend because Plaintiff admits that Ameritrade did not acquire Scottrade until after she was terminated and, thus, leave to amend would be futile.

## III.   Motion to Strike[4]

### A.   Legal Standard

Federal Rule of Civil Procedure 12(f) provides that "on motion made by a party [ ] before responding to the pleading," the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded  . . .. 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d, § 1382, pp. 706-07, 711 (1990)), *rev'd. on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Id.*; *see also Clement v. American Greetings Corp.*, 636 F. Supp. 1326, 1332 (S.D. Cal. 1986) (Motions to strike are "generally viewed with disfavor and not frequently granted."). "Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting the requested relief." *Id.* (quoting *Securities & Exchange Comm'n v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995)). "In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party, and resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in defendant's favor. This is particularly true if the moving party can demonstrate no resulting prejudice." *Id.* (internal citations omitted).

### B.   Discussion

#### 1.   Plaintiff Has Failed to Plead Class Allegations That Satisfy the Requirements of Rule 23.

##### a.   Plaintiff Has Failed to Plead Commonality and Predominance.

Commonality requires that class members suffer the same injury; merely suffering violation of the same law is insufficient. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Their claims must depend on a common contention the determination of which will resolve all of the

---

Ameritrade that existed before she was terminated from Scottrade.

[4] Although the Court granted Defendants' Motion to Dismiss with respect to all of Plaintiff's class claims, the Court also grants, in the alternative, Defendants' Motion to Strike.

claims at once.  *Id.*  In *Dukes*, the Supreme Court reversed an order certifying a nationwide class of 1.5 million female employees alleging discrimination pursuant to Title VII because commonality was not demonstrated.  564 U.S. at 359.  The plaintiffs sought "to sue about literally millions of employment decisions at once."  *Id.* at 352.

Similar to *Dukes*, Plaintiff seeks to sue about multiple employment decisions at one time, including decisions regarding compensation, assignment, selection, performance evaluation, promotion, demotion, discipline, complaints, resignation, and termination, among others.  *See e.g.*, SAC, ¶ 38-39.  However, "[w]ithout some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*."  *Dukes*, 564 U.S. at 352 (emphasis in original).  The Supreme Court described a conceptual gap between an individual's claim that he or she suffered an adverse action on discriminatory grounds and conclusory allegation regarding the existence of a policy of discrimination, and the existence of a class of employees who have suffered the same injury such that there is commonality and typicality.  *Id.* at 353.  As in *Dukes*, Plaintiff's Second Amended Complaint fails to allege facts to bridge that gap.  Instead, Plaintiff's alleged common questions of law are merely alleged legal violations phrased in the form of a question.  SAC, ¶ 38.  However, the Supreme Court has expressly rejected this approach.  *Dukes*, 564 U.S. at 349 (rejecting "Is [the alleged conduct] an unlawful employment practice?" and "What remedies should I get?" as common questions).

Plaintiff's alleged common questions of fact are also deficient. For example, Plaintiff claims that Defendants "systematically, intentionally or knowingly drove female employees to resign, and when they would not resign, terminated them for false reasons or for reasons that they did not criticize male employees."  SAC, ¶ 39.  This is a multi-faceted individualized question, not a common one because it requires a determination of each individual's reason(s) for resignation, submission of evidence to support or disprove the reasons for each individual's termination, and inquiry regarding criticism of Defendants' male employees.  Likewise, Plaintiff claims Defendants "allow the branches supervised by male managers to use profanity, offensive language, engage in drinking parties, going out to see female dancers and on the other hand when they wanted to get rid of a female branch manager come in and claim that behavior not nearly as offensive was grounds for termination of the branch manager."  *Id.*  However, this allegation also requires inquiry into the purported conduct of individual male managers as compared to the conduct of female branch managers and their subsequent discipline or lack thereof.  In addition, Plaintiff claims another common question of fact involves "whether . . . Defendants treated female branch managers and managers with disrespect, disdain, failed to give them the support they gave the male managers, and would overlook things the male branch managers did while they would criticize and penalize the female branch managers for the same thing."  *Id.*  This purported common question also requires inquiry into the specific treatment of male managers and female managers, a comparison of that treatment, and a critical evaluation of any differences.  Thus, Plaintiff's allegations "point to a hodgepodge of different alleged policies and practices that [Plaintiff says] contribute to discrimination, but it would be impossible for all of the contributing factors to 'produce a common answer to the crucial question why was I disfavored.'"  *Ladik v. Wal-Mart Stores, Inc.*, 2013 WL 2351866 (W.D. Wis. May 24, 2013) (*quoting Dukes*).  The commonality question is not whether some common questions are raised, but whether Plaintiff has alleged a common contention the truth or falsity of which will resolve the validity of the class claims "in one stroke" – whether she has alleged the "glue holding [the] reasons for the employment decisions

together." *Dukes*, 564 U.S. at 350-51.  Plaintiff has not done so and her conclusory allegations of a pattern and practice of discrimination are insufficient.  Thus, Plaintiff has failed to plead the requisite commonality.

Plaintiff's class allegations also fail to sufficiently plead predominance, which requires that common questions predominate over any questions affecting only individual class members.  FRCP 23(b)(3).  The predominance standard is even more demanding than commonality.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  It tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (*quoting Amchem Products, Inc., v. Windsor*, 117 S. Ct. 2231, 2249 (1997)).  "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-93 (9th Cir. 2001).

In this case, Plaintiff claims eight purported common issues predominate.  SAC, ¶ 47.  However, the issues identified by Plaintiff are not common questions at all; each one instead requires "a fact-intensive, individual analysis" rendering class treatment inappropriate.  *See Madrigal v. Tommy Bahama Group, Inc.*, 2011 WL 10511339, *17 (C.D. Cal. June 27, 2011). Even assuming *arguendo* that the eight issues apply to all class members, separate adjudication would be required for a variety of issues, including, but not limited to, a determination of the appropriateness of Defendants' investigation of complaints of discrimination and the resolution of those complaints; the business reasons for any demotions and/or job reassignments, retention, or termination of employees which undoubtedly would include individual employees' performance; the appropriateness of male branch managers' conduct; the merit to any criticism of managers and/or lack thereof; and the reasons for class members' resignations or terminations.  Because these questions cannot be resolved for all members in a single adjudication, the alleged common questions cannot predominate over individual issues.

In addition, to survive "rigorous" application of Rule 23's factors, a plaintiff must allege "damages are capable of measurement on a class wide basis."  *Comcast*, 569 U.S. 34-35.  "Without presenting [that] methodology, [plaintiff] cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class."  *Id.*  Plaintiff makes no reference to any damages methodology, let alone one specific enough under Rule 23.  Moreover, Plaintiff failed to address predominance in her Opposition, waiving any argument that it was sufficiently pled.  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1100 (N.D. Cal. 2017).

### b. Plaintiff Has Failed to Sufficiently Plead Superiority.

Rule 23(b)(3)(A) through (D) also requires that the class action be the superior method of resolving claims.  The Court considers the following factors in determining the existence of superiority: class members' interest in controlling separate actions; the extent of any litigation already commenced by or against class members; the desirability of concentrating litigation of the action; and the likely difficulties in managing a class action.  A class action may be superior if litigation of common issues would be more efficient, less costly, or when no realistic alternative exists.  *Madrigal*, 2011 WL 10511339, at *22-23.

In this case, Plaintiff's Second Amended Complaint lacks factual allegations addressing any of these factors. Indeed, Plaintiff's claims raise numerous individual questions. *See, e.g.*, SAC, ¶ 47. "[W]here liability and damages are depending on the resolution of factual questions employee-by-employee, office-by-office, class action is not superior to other methods of adjudication because a jury trial will devolve into an endless series of mini-trials." *Madrigal*, 2011 WL 10511339, at *23-24. The individual questions presented in the Second Amended Complaint make class treatment inferior to individual adjudication.

In addition, Plaintiff tacitly admitted that a class action is not the superior method of resolving her claims by filing an individual action in Los Angeles Superior Court alleging claims of age and gender discrimination under the FEHA – the identical claims she asserts in this action based on the identical facts. RJN, Exh. 1. Moreover, because Plaintiff failed to address superiority in her Opposition, she waived any argument that it was sufficiently pled. *Hadley*, 243 F. Supp. 3d at 1100.

### c. Plaintiff is Not an Adequate Class Representative.

Rule 23(a)(4) provides that a class can be maintained only if class representative(s) "will fairly and adequately protect the interests of the class." In this case, Plaintiff seeks to represent "current, former and future female branch managers who worked for Employer Defendants at any time during the applicable liability period including without limitation female managers who were paid less than male managers for males performing jobs that are substantially equal in actual job performance and substance, despite their title." SAC, ¶ 34. "Employer Defendants" is defined as Scottrade, Scottrade Investment Management Inc., Scottrade Financial Service Inc., Ameritrade, and Does 1-10 inclusive. SAC, p. 2. However, Plaintiff was only employed by Scottrade. SAC, ¶ 8. Although Ameritrade acquired Scottrade, it did so nearly two years after her employment at Scottrade terminated. SAC, ¶¶ 59 and 103. It is undisputed that Plaintiff was never employed by Ameritrade.

In addition, Plaintiff's DFEH complaint and Right to Sue notice only relates to Scottrade entities. RJN, Exh. 2. Therefore, Plaintiff has failed to exhaust her administrative remedies as to Ameritrade. *Romano v. Rockwell Int'l Inc.*, 14 Cal.4th 479, 492 (1996); Cal. Gov't Code § 12960(b) & (d). Therefore, Plaintiff cannot represent class members who were employed by Ameritrade.

### 2. Plaintiff Has Failed to Plead an Ascertainable Class.

"A class definition must be 'precise, objective, and presently ascertainable' so that the class's distinct group members can be identified with particularity." *Dioquino v. Sempris, LLC*, 2012 WL 6742528, at *12 (C.D. Cal. Apr. 9, 2012). In this case, Plaintiff seeks to represent a "Nationwide and California Class" made of six subclasses. SAC, ¶ 34. This definition suffers multiple defects making it unascertainable. First, Plaintiff's subclasses consist of unmanageable "fail safe" classes that require a determination of liability before class members can be identified. *Kamar v. RadioShack Corp.*, 375 Fed. Appx. 734, 736 (9th Cir. April 14, 2010) (noting that fail safe classes are "palpably unfair to the defendant," and "unmanageable – for example, to whom should the class notice be sent?"); *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *8 (C.D. Cal. Dec. 21, 2016) (striking fail safe class). Such "fail safe" classes create one-sided results where the class is only bound by the result if it is favorable to the class. *Adashunas v. Negley,* 626 F.2d 600,

604 (7th Cir. 1980). For example, two of Plaintiff's subclasses are comprised of "women who were discriminated against in treatment, terms and conditions of their employment." SAC, ¶ 34. However, Title VII and FEHA prohibit employers from discriminating against any individual with respect to compensation, terms, conditions or privileges of employment because of the individual's sex. 42 U.S.C.S. §2002e-2(a)(1); Cal. Govt. Code §12940(a). Because class members are identified only by a finding of liability, this is an invalid "fail safe" class. *Dodd-Owens v. Kryphon, Inc.*, 2007 WL 420191,*9-10 (N.D. Cal. Feb. 5, 2007) (striking class allegations where class defined as employees "who have experienced gender discrimination at any time during the applicable liability period"). Similarly, two of the alleged subclasses are comprised of "female managers who were paid less than male managers for males performing jobs that are substantially equal in actual job performance and substance, despite their title." SAC, ¶ 34. However, the Equal Pay Act prohibits discrimination by an employer paying an employee wages at a rate less than it pays an employee of the opposite sex for equal work under similar conditions (subject to several exceptions). 29 U.S.C. §206(d). Thus, this subclass is also an impermissible "fail safe" class defining membership by liability.

Second, the subclasses as defined are vague and ambiguous. For example, four of the six subclasses fail to identify the purportedly discriminatory employer, the positions at issue, or the applicable time period covered by the subclass. These subclasses purport to encompass all employees of some unnamed employer for an indeterminate amount of time. Without allegations identifying the employer accused of wrongdoing, the positions subject to the discriminatory treatment, or the time period at issue, the class is not sufficiently "precise, objective, and presently ascertainable."

Third, Plaintiff seeks to represent a Nationwide and California Class but she fails to plead a viable cause of action under federal law that could possibly support any nationwide class claims. As discussed above, Plaintiff failed to exhaust her administrative remedies for her Title VII and ADEA claims, and she has failed to adequately allege an Equal Pay Act claim. Therefore, Plaintiff's only remaining claims are brought under FEHA, which only protects individuals employed in California. *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (1996). Accordingly, there is no basis for a nationwide class. *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1063 (N.D. Cal. 2014) (striking class allegations where plaintiffs sought to represent nationwide class under California's wage and hour laws). Indeed, two of Plaintiff's subclasses are National Classes comprised of California employees. Therefore, the Court concludes that these subclasses are contradictory and cannot be maintained.

Fourth, Plaintiff's proposed Class Definition conflicts with other allegations throughout the Second Amended Complaint. Paragraph 34 lists six subclasses, none of which match the class descriptions elsewhere in the Second Amended Complaint. For example, on pages 1 and 2 of the Second Amended Complaint, Plaintiff purports to bring this action "on behalf of other aggrieved current and former female managers and branch managers, and all managers and branch managers (regardless of gender) who were over the age of 40 and were terminated and replaced with a younger less qualified employee, and on behalf of all similarly-situated current and former female managers, and all similarly situated current and former and branch managers who were over the age of 40 and replaced with a younger less qualified employee." This description does not match the description of any of the six subclasses alleged in paragraph 34. Thus, it is unclear whether Plaintiff purports to represent all female managers and managers over 40 or only those

who have been replaced. In addition, Plaintiff failed to address Defendants' arguments regarding ascertainability in her Opposition, and, thus, she waived any argument that it was sufficiently pled. *See Hadley*, 243 F. Supp. 3d at 1100.

IV.     **Local Rule 23-3**[5]

On August 14, 2018, the Court issued an Order to Show Cause ("OSC") requiring Plaintiff to show cause why the class allegations in her Second Amended Complaint should not be stricken for failure to timely file a motion for class certification as required by Local Rule 23-3. On August 16, 2018, Plaintiff filed her Response to the OSC.

Rule 23 of the Federal Rules of Civil Procedure provides that this Court must determine whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). The Central District of California has, in an attempt to comply with requirements of Federal Rule of Civil Procedure 23, adopted Local Rule 23-3 which provides, in pertinent part:

> Within 90 days after service of a pleading purporting to commence a class action other than an action subject to the Private Securities Litigation Reform Act of 1995, P.L. 104-67, 15 U.S.C. § 772-1 *et seq.*, the proponent of the class shall file a motion for certification that the action is maintainable as a class action, unless otherwise ordered by the Court.

Local Rule 23-3 and Federal Rule of Civil Procedure 23(c)(1) share an important purpose. That purpose is to give a clear definition to the parameters of the putative class, to outline the claims involved in the class action and to apprise the defendants of their potential liability as soon as practicable. As other courts have noted, "[a] timely motion for class certification is premised on sound practical considerations," including preservation and protection of the putative class members' claims. *See Jones v. Hartford Ins. Co. of the Midwest*, 243 F.R.D. 694, 695 (N.D. Fla. 2006).

The Court has discretion to strike class allegations for failure to comply with Local Rule 23-3. *See, e.g., Watson v. Schwarzenegger*, 2009 WL 1956222, at * 1 (9th Cir. June 23, 2009) (finding that the district court did not abuse its discretion in enforcing Local Rule 23-3); *Verner v. Swiss II, LLC*, 2010 WL 99084, at *2 (C.D. Cal. Jan. 6, 2010) ("Because Plaintiff failed to comply with Local Rule 23-3's ninety-day time limit for filing motions for class certification, the Court strikes the class allegations in Plaintiff's First Amended Complaint.").

Pursuant to Local Rule 23-3, Plaintiff had 90 days from service of a pleading purporting to commencing a class action, or until August 6, 2018, to file a motion for class certification. In her Response to the OSC, Plaintiff failed to offer any credible justification for her failure to file a motion for class certification in compliance with Local Rule 23-3. Plaintiff argues that she needed to

---

[5] Although the Court granted Defendants' Motion to Dismiss with respect to Plaintiff's class claims and Defendants' Motion to Strike, the Court also strikes, in the alternative, Plaintiff's class allegations for failure to comply with Local Rule 23-3.

conduct discovery prior to filing a motion for class certification and that "Plaintiff is not permitted to serve discovery requests prior to the Rule 26(f) case management conference." Response, 2:4-5. However, the Court specifically warned Plaintiff in its February 14, 2018 Standing Order that "[c]ounsel shall begin to actively conduct discovery before the Fed. R. Civ. P. 26(f) conference because at the Scheduling Conference the Court will impose tight deadlines to complete discovery." In addition, Plaintiff failed to even file an application seeking a continuance of the Local Rule 23-3 deadline, despite the fact that the Court granted continuances of other deadlines when sought by the parties, or serve any discovery in this case until after the deadline had passed. Therefore, Plaintiff failed to even attempt to meet the well-known Local Rule 23-3 deadline due to Plaintiff's own carelessness and neglect.[6]  *Watson*, 347 Fed. Appx. at 284-85 (affirming denial of relief from Local Rule 23-3 because delay in filing class certification motion based on the plaintiff's unfamiliarity with the local rules did not constitute "excusable neglect").

Accordingly, the Court strikes the class allegations from Plaintiff's Second Amended Complaint for Plaintiff's failure to comply with Local Rule 23-3.

## V. Conclusion

For all the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED without leave to amend** as to as to Plaintiff's (1) Title VII and ADEA claims; (2) class claims; (3) disparate impact theory of liability; (4) Equal Pay Act claim; and (5) alter ego, agency, and joint venture theories of liability.  In addition, Plaintiff's Motion to Strike is **GRANTED** in its entirety **without leave to amend**.

IT IS SO ORDERED.

---

[6] The facts of this case are in sharp contrast to those present in *ABS Entertainment, Inc. v. CBS Corporation*, __ F.3d __, 2018 WL 3966179 (9th Cir. 2018), where the Ninth Circuit found that the district court had erred in dismissing the plaintiff's motion for class certification for failure to file a timely motion under Local Rule 23-3 when the parties had previously filed two stipulations with the Court seeking leave from the 90 day deadline under Local Rule 23-3, which were denied, and struck a timely filed motion for class certification for two technical deficiencies.  In this case, Plaintiff simply ignored Local Rule 23-3 and allowed the deadline to expire without seeking relief from Local Rule 23-3.